## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

Marty Calderon,

Plaintiff,

v.

1:25-CV-1442
(GTS/MJK)

Ulster County Area Transit, *et. al.*,

Defendants.

---

Marty Calderon, Plaintiff *pro se*

Mitchell J. Katz, U.S. Magistrate Judge

To the Honorable Glenn T. Suddaby, U.S. District Judge:

## ORDER and REPORT- RECOMMENDATION

Calderon commenced this action on October 15, 2025, by filing a Complaint and moving for leave to proceed *in forma pauperis* ("*IFP*") (Dkts. 1, 2). The Clerk has sent the Complaint and *IFP* application to this Court for its review.

## I.    BACKGROUND

During the week of October 1, 2025, Defendants purportedly told Calderon that she could no longer ride the public bus because she urinated on it. (Complaint, Dkt. 1, at ¶ 3).[1] The following week,

---

[1] The citation pagination refers to the CM/ECF pagination.

Calderon alleges that Defendants told her "third party advocate" that she could no longer ride the public bus because she urinated on it. (*Id.* at ¶4). Calderon claims that she does not have a history of urinary incontinence and that she "never" urinated on the bus. (*Id.* at ¶ 10).

Calderon asserts claims under 42 U.S.C. §§ 1981, 1983, and the Fourteenth Amendment. (*Id.* at ¶ 1.) Calderon also seeks damages for slander, defamation *per se*, emotional distress, and loss of income. (*Id.* at ¶¶ 1, 11).

## II.    *IFP* APPLICATION

Calderon declares in her *IFP* application that she is unable to pay the filing fee. (Dkt. 2). After reviewing her application, this Court finds that Calderon is financially eligible for *IFP* status.

## III.    STANDARD OF REVIEW

Courts can *sua sponte* dismiss a case at any time if they determine that an action is (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

When determining whether an action is frivolous, courts must consider whether the complaint lacks an arguable basis in law or fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (cleaned up); *see also* 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *See Neitzke*, 490 U.S. at 327; *see also Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974).

Courts must show liberality toward *pro se* litigants and use extreme caution when *sua sponte* dismissing *pro se* complaints. *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000). Still, courts have a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See id.*

## III.    DISCUSSION

### A. The District Court should dismiss the Complaint because Calderon has not established *Monell* liability.

The Court recommends dismissing Calderon's Complaint against Ulster County Area Transit ("UCAT").

UCAT is "operated by Ulster County." *See*

https://uctc.ulstercountyny.gov/projects/ulster-county-area-transit-maintenance-and-storage-facility-site-selection-plan/ (last viewed on

November 13, 2025). Further, UCAT's website shares the same domain as Ulster County. *See* https://ucat.ulstercountyny.gov/ (last viewed on November 13, 2025). Calderon's claim against UCAT is effectively a claim against Ulster County. *See White v. City of Syracuse,* No. 5:11-CV-1098 (GTS/ATB), 2011 WL 7109423, at *3 (Court deemed the County's Regional Transportation Authority a "municipality" for purposes of its 28 U.S.C. § 1915 analysis because its members were municipalities).

In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. A municipality may not be held liable solely because it employs a tortfeasor. *See LaVertu v. Town of Huntington*, No. 13-CV-4378, 2014 WL 2475566, at *3 (E.D.N.Y. Apr. 4, 2014) (citing inter alia *Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, (2010)), *report recommendation adopted in part*, 2014 WL 2506217 (E.D.N.Y. June 2, 2014). Only when the municipality, through the execution of its policies, deprives an individual of their constitutional rights, is it liable for the injury. *See Monell*, 436 U.S. at 694.

"The existence of a municipal policy that gives rise to *Monell* liability can be established in four ways: "(1) a formal policy endorsed

by the municipality; (2) actions directed by the government's 'authorized decisionmakers' or 'those who establish governmental policy;' (3) a persistent and widespread practice that amounts to a custom of which policymakers must have been aware; or (4) a constitutional violation resulting from policymakers' failure to train municipal employees[.]" *Deferio v. City of Syracuse*, 770 F. App'x 587, 590 (2d Cir. 2019)(cleaned up). "Once a plaintiff has demonstrated the existence of a municipal policy, a plaintiff must then establish a causal connection, or an 'affirmative link,' between the policy and the deprivation of his constitutional rights. *Id.* (citing *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)); *see also Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (holding that plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged").

Calderon has not alleged any formal policy, widespread practice, or actions directed by Ulster County's 'authorized decisionmakers' or 'those who establish governmental policy' sufficient to satisfy the pleading requirements for a *Monell* claim. *See Deferio* 770 F. App'x at 590. Even liberally construing Calderon's Complaint as the Court must

do, the allegations do not lead to a plausible inference that there is an Ulster County policy or custom that was implemented to wrongfully deny Plaintiff her right to ride on the public bus.

Also fatal to Calderon's claim is her failure to plead a deprivation of an underlying constitutional right. Although the Complaint references the Fourteenth Amendment, it is devoid of any allegations sufficient to give rise to a violation of any constitutional rights afforded to her thereunder.

The Court therefore recommends that the Complaint be dismissed *without prejudice and with leave to amend.*

## B. The District Court should dismiss Calderon's claims under 42 U.S.C. § 1981.

The Complaint alleges in part that "Defendants violated her rights pursuant to … 42 U.S.C. 1981 …" (Complaint, Dkt. 1, at ¶ 1).

Section 1981 provides that, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a).

"To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the statutorily enumerated activities." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993), *cert. denied*, 516 U.S. 824 (1995); *see also Broich v. Inc. Vill. of Southampton*, 462 Fed. Appx. 39, 42 (2d Cir. 2012) (summary order). With respect to the second element, a plaintiff must "offer more than conclusory allegations that he was discriminated against because of his race." *Mian*, 7 F.3d at 1088. A plaintiff must "plead sufficient facts to state a plausible claim for relief under 42 U.S.C. § 1981," and cannot rely on "wholly conclusory allegations of discriminatory intent." *Zavalidroga v. Cote*, 395 F. App'x. 737, 740 (2d Cir. 2010) (summary order); *see also Clyburn v. Shields*, 33 F. App'x. 552, 555 (2d Cir. 2002) (summary order) ("claims of race-based discrimination under . . . 42 U.S.C. § 1981 . . . require that intentional discrimination be alleged in a non-conclusory fashion").

Liberally construed, the Complaint fails to plausibly allege a claim under § 1981. As an initial matter, Calderon's allegations have nothing

to do with the rights described in the statute. Calderon's claims are predicated on her exclusion from public transportation because she is wrongfully alleged to have urinated on a public bus.

Even if Calderon's claims were within the scope of § 1981, the Court still recommends dismissal because there are no allegations in the Complaint that: (1) she is a member of a racial minority, or (2) that Defendants intended to discriminate against her based on race. *See Mian,* 7 F.3d at 1087.

Because the Complaint fails to comply with the pleading requirements of § 1981, the Court recommends that it be dismissed *without prejudice and with leave to amend.*

## C. The District Court should dismiss the Complaint against the individual Defendants because Calderon has not established their personal involvement in any alleged constitutional deprivation.

It has long been established that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983[,]" and supervisory officials may not be held liable merely because they held a position of authority. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted). Similarly,

"[i]n order to make out a claim for individual liability under § 1981, 'a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action…. Personal liability under section 1981 must be predicated on the actor's personal involvement.'" *Patterson v. County of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004) (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000) (internal quotation marks omitted)). "Personal involvement [under 42 U.S.C. § 1983 and 42 U.S.C. § 1981] includes not only direct participation in the alleged violation but also gross negligence in the supervision of subordinates who committed the wrongful acts and failure to take action upon receiving information that constitutional violations are occurring." *Patterson*, 375 F.3d at 229.

Calderon alleges that "Defendants violated and slandered the Plaintiff by telling the Plaintiff she could no longer take their bus because she urinated on the bus." (Complaint, Dkt. 1, at ¶ 3). Calderon further alleges that "the Defendants also told the Plaintiff's third party advocate that she could no longer ride their bus because she urinated on the bus." (*Id.*, at ¶ 4). The Complaint lacks any specific allegations about either individual Defendant. Calderon does not plead which

individual Defendant, if either, made the alleged statements to her and her third-party advocate. Calderon's allegations are conclusory and lack any details about the individual Defendants' personal involvement, if any. *See Holland v. City of New York*, 197 F. Supp. 3d 529, 550 (S.D.N.Y. June 24, 2016) ("Conclusory accusations regarding a defendant's personal involvement in the alleged violation, standing alone, are not sufficient[.]").

The Court therefore recommends that the Complaint be *dismissed without prejudice and with leave to amend* as to Defendants Roser and Troccia.

## D. The District Court should dismiss Calderon's claims for slander and defamation *per se.*

Calderon claims damages for "defamation *per se*" and "slander *per se.*" (Complaint, Dkt. 1, at ¶ 1, 11).

There is no cause of action for libel or slander under Section 1983 "unless it implicates a liberty interest." *Perez v. Amato*, 12-CV-623 (TJM/CFH), 2013 U.S.Dist. LEXIS 100689, at *16 (N.D.N.Y. June 13, 2013) (internal citation and quotation marks omitted). "Defamation alone, even by a government entity, does not constitute a deprivation of a liberty interest protected by the Due Process Clause." *Martz v.*

*Incorporated Village of Valley Stream*, 22 F.3d 26, 31 (2d Cir.1994).

Calderon's claims are state tort law claims over which the Court would

need to exercise supplemental jurisdiction, and the decision to do so is

within this Court's discretion. *See Kolari v. New York-Presbyterian*

*Hosp.*, 455 F.3d 118, 121-22 (2d Cir. 2006)). The Court cannot, at this

juncture, determine whether supplemental jurisdiction will be

exercised. If, however, the Court decides to exercise supplemental

jurisdiction over Plaintiff's claims for slander and defamation *per se*,

they must be pled in accordance with New York state law.

The Court therefore recommends dismissing Calderon's claims for

slander and defamation *per se, without prejudice and with leave to*

*amend.*

## E. The District Court should dismiss Calderon's damage claim for emotional distress.

Calderon "claims money damages for emotional distress." (Dkt. 1,

at § 11).

It is well-established that courts may award damages for

emotional distress in Section 1983 cases. *See Patrolmen's Benevolent*

*Ass'n of N.Y. v. City of New York*, 310 F.3d 43 (2d Cir. 20024); *see also*

*Miner v. City of Glens Falls*, 999 F.2d 655, 662 (2d Cir. 1993). "However,

the mere fact that a constitutional deprivation has occurred does not justify the award of such damages; a plaintiff must establish that they suffered an actual injury caused by the deprivation." *Patrolmen's Benevolent Ass'n of N.Y.*, 310 F.3d at 55 (citing *Carey v. Piphus*, 435 U.S. 247, 263-64, (1978)).

Calderon's claim for emotional distress fails for several reasons. First, Calderon has not, as noted above, pleaded any underlying constitutional deprivation and therefore, no damage claim for emotional distress can lie. Second, even if Calderon's constitutional rights had been traversed, there are no allegations in the Complaint plausibly suggesting that she suffered an actual injury. Calderon alleges, without more, that she "claims money damages for emotional distress." (Dkt. 1, at 3). That is not enough.

The Court therefore recommends dismissing Calderon's damage claim for emotional distress *with prejudice and without leave to amend.* Any amendment would be futile.

### F. The District Court should allow Calderon to amend her Complaint.

Generally, before courts dismiss a *pro se* complaint or any part of the complaint on its own, they should afford the plaintiff the opportunity to

amend at least once; but leave to re-plead may be denied where any amendment would be futile. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with a plaintiff's causes of action is substantive such that better pleading will not cure it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Out of an abundance of caution and in deference to Calderon's *pro se* status, the Court recommends that the Complaint be dismissed *without prejudice and with leave to amend* to allow her the opportunity to cure the defects noted above *except* as to her damage claim for emotional distress which should be dismissed *with prejudice and without leave* to amend based on futility.

The Court advises Calderon that should the District Court allow her to amend the Complaint, the pleading must clearly be labeled "Amended Complaint" and bear the docket number 1:25-CV-01442 (GTS/MJK). Calderon is strongly encouraged to read and comply with the *pro se* handbook, a copy of which was mailed to her on October 16, 2025. (Dkt. 3). In deference to Calderon's *pro se* status, the Clerk is directed to mail Calderon an additional copy of the *pro se* handbook.

The amended pleading must be signed[2] and otherwise comply with Fed. R. Civ. P. 8 and 10.

Calderon must set forth all claims she intends to assert and plausibly allege that a case or controversy exists between her and any Defendants by name over which this Court has jurisdiction. Calderon must clearly set forth facts giving rise to her purported claims in separately and consecutively numbered paragraphs. The amended pleading must be a wholly integrated and a complete pleading that does not rely upon, or incorporate by reference, any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." (internal quotation marks omitted)). Piecemeal pleadings are not permitted. *See* L.R. 15.1.

**WHEREFORE,** based on the findings above, it is

---

[2] Rule 11(a) of the Federal Rules of Civil Procedure requires that "[e]very pleading . . . must be signed . . . by a party personally if the party is unrepresented." Fed. R. Civ. P. 11(a). Moreover, Rule 10.1(c)(2) of the Local Rules of Practice of this District requires that all documents submitted to the Court include the original signature of the attorney or the *pro se* litigant.

**ORDERED**, that Calderon's motion to proceed *in forma pauperis* (Dkt. 2) is **GRANTED**,[3] and it is further

**RECOMMENDED**, that the Complaint be **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND** *except* as to Calderon's damage claim for emotional distress, which should be **DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND,** and it is further

**ORDERED**, that the Clerk provide Calderon with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (*per curiam*), and it is further

**ORDERED**, that the Clerk mail Calderon an additional copy of the *pro se* handbook.

In accordance with 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the

---

[3] Although his *IFP* application has been granted, Calderon will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: November 13, 2025.

                                           _____

                                           Hon. Mitchell J. Katz
                                           U.S. Magistrate Judge

2011 WL 7109423
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Saundra V. WHITE, Plaintiff,

v.

CITY OF SYRACUSE, et al., Defendants.

No. 5:11–CV–1098 (GTS/ATB).
|
Sept. 21, 2011.

**Attorneys and Law Firms**

Saundra V. White, Syracuse, NY, pro se.

## ORDER and REPORT–RECOMMENDATION

ANDREW T. BAXTER, United States Magistrate Judge.

**\*1** The Clerk has sent to the court a civil rights complaint, together with an application to proceed *in forma pauperis* (IFP), filed by *pro se* plaintiff, Saundra V. White.[1] (Dkt.Nos.1, 3).

[1]  The court notes that this is plaintiff's fifth complaint, filed in the Northern District of New York. All of plaintiff's other complaints have been dismissed, and the cases have been closed. *See White v. Verison,* 5:06–CV–617 (closed Oct. 15, 2009) (complaint dismissed on motion for summary judgment, in part because plaintiff wilfully failed to admit or deny defendant's factual assertions and because of the statute of limitations); *White v. Wackenhut Security Contractor,* 5:07–CV–349 (closed Aug. 21, 2007) (dismissed *sua sponte* after plaintiff afforded an opportunity to amend); *White v. Monarch Pharmaceuticals, Inc.,* 5:07–CV–585 (closed Jan. 17, 2008) (dismissed *sua sponte* under section 1915(e) for failure to state a claim); and *White v. St. Joseph's Hospital,* 5:07–CV–1286 (closed May 7, 2008) (dismissed *sua sponte* under section 1915(e)(2)(B)(ii) for failure to state a claim).

**I.** *In Forma Pauperis (IFP) Application*

A review of plaintiff's IFP application shows that plaintiff alleges that she is not employed and is currently receiving disability-related payments. (Dkt. No. 3 at 2). Based on a review of plaintiff's application, this court finds that plaintiff meets the financial criteria for proceeding without the payment of fees.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke,* 490 U.S. at 327; *Harkins v. Eldridge,* 505 F.2d 802, 804 (8th Cir.1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir.2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.,* 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

**II.** *Complaint*

Plaintiff states that a Central New York Regional Transportation Authority ("Centro") bus driver lowered a "forklift" on plaintiff, and he did not realize that he had done so until plaintiff alerted him to this fact. (Compl.¶ 3). Plaintiff states that she sought medical care from physicians, "who established ... that an injury had occurred." (*Id.*) Plaintiff claims that the bus driver acknowledged "mistake" and offered plaintiff a "scratch paper" so that she could write an "account of [the] injury," but did not provide plaintiff with a carbon copy for herself. Plaintiff states that she asked Centro for accident report "forms," but that the company did not respond, despite a written request. (*Id.*)

**\*2** Plaintiff claims that her First, Second, and Fourteenth Amendment rights have been violated because defendants deprived her of "life, liberty and the pursuit of happiness." (Compl.¶ 4(a)). Plaintiff states that this incident has caused her "pain ... suffering ... and emotional trauma ... requiring the expenditure of money for treatment." (Compl.¶ 4(b)). Plaintiff also seems to be alleging some sort of Equal Protection violation in that she states that she was denied "[f]reedom from injury and being treated differently because of an existing disability." (Compl.¶ 5(b)). She also states that her injuries were the result of "policies and customs of Centro ... City of Syracuse and County of Onondaga." (Compl.¶ 3). She seeks damages for the violation of these constitutional rights.

## III. Section 1983

### A. Legal Standards

In order to state a claim pursuant to 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct was attributable, at least in part, to a person or entity acting under color of state law, and that the challenged conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States. *Cornejo v. Bell,* 592 F.3d 121, 127 (2d. Cir.2010), *cert. denied sub nom. Cornejo v. Monn,* —— U.S. ——, 131 S.Ct. 158, 178 L.Ed.2d 243 (2010); *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993). The plaintiff must also allege that the defendant was personally involved in the conduct causing the constitutional violation. *Farid v. Ellen,* 593 F.3d 233, 249 (2d Cir.2010) (citation omitted).

When a plaintiff bases her claims on municipal liability, plaintiff must allege a direct causal link between a municipal "policy or custom" and the alleged violation. *Bender v. City of New York,* No. 09 Civ. 3286, 2011 WL 4344203, at

\*13 (S.D.N.Y. Sept.14, 2011) (citing *Bohmer v. New York,* 2011 WL 2651872, at \*3 (S.D.N.Y. June 16, 2011)). " '[B]oilerplate assertions that a municipality has a custom or policy resulting in a constitutional deprivation of plaintiff's rights are insufficient.' " *Id.* (quoting *Bohmer, supra* ). The policy must be the "moving force" behind the constitutional violation. *Bd. of the County Comm'rs v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (internal quotations omitted).

A municipality may not be found liable simply because one of its employees committed a tort. *Brown,* 520 U.S. at 403. Plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a causal connection between the municipal action and the deprivation of federal rights. *Id.* Where the plaintiff claims that the municipality has not directly inflicted an injury, but has "caused" an employee to do so, "rigorous standards of culpability and causation must be applied" so that the municipality is not held liable solely for the actions of an employee. *Brown,* 520 U.S. at 405.

### B. Application

#### 1. Color of State Law

**\*3** It is well-settled that defendants City of Syracuse and Onondaga County, as municipalities, act under color of state law for purposes of section 1983. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Zherka v. DiFiore,* 412 Fed. Appx. 345, 348 (2d Cir.2011). Although the analysis is a bit more complicated for Centro, for purposes of this recommendation, the court will assume that Centro also acts under color of state law because Centro's members are counties. [2]

[2]  The court notes that Cento's website states that the "current membership of the [Central New York Regional Transit Authority] consists of the counties of Onondaga, Oneida, Cayuga, and Oswego." http:// www.centro.org/aboutus.aspx. In *Thrall v. CNY CENTRO, Inc.,* Senior Judge Neal P. McCurn assumed without analysis that Centro acted under color of state law when he determined that a Union did not act under color of state law because there was insufficient evidence of conspiracy with Centro. *Thrall v. CNY CENTRO, Inc.,* No. 5:09–CV–567, 2011 WL 743746, at \*4 (N.D.N.Y. Feb.23, 2011). A private entity may act under color

of state law if it acted in concert with a state actor. *Id.* Plaintiff in *Thrall* made no claim that the Union or another individual defendant "conspired with Centro to violate his constitutional rights." *Id.* Thus, without specifically stating the fact, Judge McCurn found that Centro was a state actor.

### 2. Municipal Liability

Although plaintiff makes a completely conclusory statement that her injuries were the result of policies and customs of Centro, the City of Syracuse, and Onondaga County, plaintiff sets forth absolutely no basis for this statement. In addition, the facts as stated in the complaint do not even lead to a plausible inference that a policy or custom of any supervisor, company, or municipality was responsible for the plaintiff's accident. As stated above, such "boilerplate" accusations are insufficient to state a claim of municipal liability.[3] Thus, plaintiff's claims may be dismissed as against the City of Syracuse and Onondaga County.

[3]    This assumes that the City of Syracuse is even involved in Centro. Although it is unnecessary to this court's recommendation, the City of Syracuse is not one of Centro's members and would therefore, not be responsible for the actions of a Centro employee. http:// www.centro.org/ aboutus.aspx.

### 3. Centro

Centro is not a "municipality," although its members are municipalities; however, the same rationale applies to dismiss any civil rights claims against Centro. *Respondeat superior* is not an acceptable basis for liability under section 1983, regardless of whether the defendant is a municipality or an individual. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citation omitted); *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003). In her complaint, plaintiff simply states that on an unspecified date, a Centro bus driver lowered a "forklift"[4] on plaintiff, and that plaintiff had to alert him that she was pinned underneath. (Compl.¶ 3). Holding Centro liable for such an incident would constitute a finding of *respondeat superior.* Thus, plaintiff's claims may be dismissed in their entirety.

[4]    The court assumes that plaintiff means a *wheelchair* lift that is often attached to buses that transport handicapped individuals.

### 4. Constitutional Violation

Although not necessary to the court's recommendation, there is an alternate basis for dismissal of this action. Negligence does not rise to the level of a constitutional violation. *Daniels v. Williams,* 474 U.S. 327 (1986); *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). *See also Catanzaro v. Weiden,* 188 F.3d 56, 62 n. 3 (2d Cir.1998) (citing the general proposition that negligence can not constitute a due process violation). Plaintiff states that the bus driver pinned plaintiff under the "forklift" and "acknowledged mistake." (Compl.¶ 3). No interpretation of plaintiff's statement supports a constitutional claim under those circumstances. The fact that Centro refused to give plaintiff an accident report form certainly does not qualify as a constitutional violation. This case is essentially an attempt at bringing a personal injury action against Centro in federal court. The law does not support such an action.

**\*4** Although plaintiff also states that she was "treated differently because of an existing disability," there is no basis for this conclusory statement. The Equal Protection Clause of the Fourteenth Amendment requires that the government treat all similarly situated people alike. *Nicholas v. Tucker,* 114 F.3d 17, 20 (2d Cir.1997). Generally, the equal protection clause has been "concerned with governmental 'classifications that affect some groups of citizens differently than others.' " *Engquist v. Or. Dep't of Agric.,* 553 U.S. 591, 601, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008).

In this case, at worst, plaintiff is complaining about an incident that happened while she was either getting on or off a Centro bus. Plaintiff does not allege what disability she has or how she was treated differently because of her disability. In fact, there is no indication that she was treated "differently" than anyone else, regardless of classification. Thus, to the extent that plaintiff's complaint can be read to allege an "equal protection" claim, it may also be dismissed.

### IV. Opportunity to Amend

Generally, when the court dismisses a pro se complaint *sua sponte,* the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993). In this case, the court finds that any attempt of the plaintiff to amend this complaint would be futile, and she would still be unable to state a federal claim.

2011 WL 7109423

**WHEREFORE,** based on the findings above, it is

**ORDERED,** that plaintiff's motion to proceed IFP (Dkt. No. 3) is **GRANTED FOR PURPOSES OF FILING ONLY,** and it is

**RECOMMENDED,** that this action be **DISMISSED IN ITS ENTIRETY** *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2) (B) (ii), and it is further

**RECOMMENDED,** that if the District Court adopts this recommendation, the court further certify that any appeal from this matter would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3), and it is

**ORDERED,** that the Clerk of the Court serve a copy of this Order on plaintiff in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec. of Health & Human Servs.,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b) (1); Fed.R.Civ.P. 6(a), 6(e), 72.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 7109423

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1.  Docket 5:11cv01098**<br>WHITE v. CITY OF SYRACUSE ET AL | — | N.D.N.Y. | Sep. 15, 2011 | Docket |

**History (2)**

**Direct History (2)**

1. White v. City of Syracuse 🖙
2011 WL 7109423 , N.D.N.Y. , Sep. 21, 2011

*Report and Recommendation Adopted by*

2. White v. City of Syracuse
2012 WL 254075 , N.D.N.Y. , Jan. 27, 2012 , appeal dismissed (2nd Circ. 12-482) ( Jun 26, 2012 )

2014 WL 2475566
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Jennifer LAVERTU and John LaVertu, Plaintiffs,
v.
The TOWN OF HUNTINGTON, Defendant(s).

No. CV 13–4378(SJF)(WDW).
|
Signed April 4, 2014.

**Attorneys and Law Firms**

Steven A. Morelli, Paul Bartels, The Law Offices of Steven A. Morelli, P.C., Garden City, NY, for Plaintiffs.

Thelma N. Neira, Town of Huntington, John C. Bennett, Gathman & Bennett, LLP, Huntington, NY, for Defendants.

### *REPORT AND RECOMMENDATIONS*

WILLIAM D. WALL, United States Magistrate Judge.

**\*1** Before the court on referral from District Judge Feuerstein is a motion to dismiss by defendants. DE[11 & 14]. The motion is opposed by the plaintiffs. DE[12]. For the reasons set forth herein, I recommend that the motion be granted in regard to the First Amendment and Due Process claims, and denied in regard to the Equal Protection claim. I further recommend that the plaintiffs be given leave to replead.

### BACKGROUND

The plaintiffs filed this action in August 2013, alleging civil rights violations by the defendant Town related to the plaintiffs' opposition to the proposed Avalon Bay housing project. Complaint, DE[1]. The plaintiffs report that they released a YouTube video about the proposed project and other issues on January 28, 2011, and allege that the Town retaliated against them in response. On February 5, 2011, the Town released its own YouTube video in rebuttal, and, the plaintiffs allege, "targeted Plaintiffs' home with baseless summonses," in violation of their First Amendment rights. DE[1], ¶ 2. They further allege that the Town "target[ed] Mr.

LaVertu's plumbing license in an attempt to put him out of business, as part of their retaliatory efforts. *Id.*

The plaintiffs assert that the Town's rebuttal video was harassing and improper, because it gave information about the LaVertu's tax records. The "baseless summonses" were issued in June 2011 in regard to a retaining wall allegedly erected without a permit, and the absence of a Certificate of Occupancy for the LaVertu's home for a two story dwelling. The defendant, in support of this motion, has annexed documents that add details about those summonses. The plaintiffs urge the court to ignore such exhibits as improper on a motion to dismiss, but some of the exhibits can be considered, either because they are referenced in the Complaint or the court can take judicial notice of them. Looking to the admissible documents and the Complaint, it appears that the LaVertus originally entered a plea of not guilty as to the alleged violations, asserting that the retaining wall was on their neighbor's property and applying for a Letter In Lieu of a Certificate of Occupancy. A Letter in Lieu application was filed on February 12, 2012, and they were granted a Letter in Lieu on February 21, 2012. The grant of the letter was later disapproved, on October 16, 2012. *See Barfuss Decl.,* DE[11–4], Exhs. A, B & G. The plaintiffs say that they did not learn of the disapproval for several months after it was issued. In the Complaint, the plaintiffs allege that the original Letter in Lieu was disallowed as part of a "witch hunt" against them by the Town. Compl., ¶ 39. Resolution of the Letter in Lieu issue is apparently ongoing in the County District Court.

The name on the accusing instruments was changed from John and Jennifer LaVertu to only Jennifer LaVertu, and, on June 12, 2012, Mrs. LaVertu pleaded guilty to a violation of Huntington Town Code § 87–25 for failure to have a C of O for a two story dwelling. *See* Turner Decl., DE[11–3], Exs. C & D. Pursuant to the Conditions of Discharge of the violation, which was dated June 20, 2012, she was required to "follow through to legalize [the] dwelling at 4 Meredith Dr., Huntington Station to be completed within 4 months of this notice," and to pay a $750 fine. *Id.,* Ex. C. A Declaration of Delinquency was issued by the Suffolk County District Court on or about January 11, 2013, indicating that the LaVertus had not followed through on the Conditions of Discharge and were in default for not making the required changes in the four month period given to them. Turner Decl., Ex. E. It is unclear whether Mrs. LaVertu pleaded guilty to the retaining wall charge, but that charge was "dismissed in satisfaction." The Complaint asserts that the charge was baseless and that the retaining wall is on the Lavertus' neighbors' property. The

LaVertu v. Town of Huntington, Not Reported in F.Supp.3d (2014)
Case 1:25-cv-01442-GTS-MJK    Document 5    Filed 11/13/25    Page 24 of 56
2014 WL 2475566

defendant disputes that in the motion papers, but I make no recommendation regarding it.

**\*2**  This lawsuit was filed in August 2013, and, in it, the plaintiffs assert claims under the First Amendment, the Due Process Clause and the Equal Protection Clause pursuant to Section 1983. The defendants seek dismissal of all claims in the Complaint.

### DISCUSSION

**Rule 12(b)(6) Standards:**

The defendants move pursuant to Rule 12(b)(6). In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enterprises,* 448 F.3d 518, 521 (2d Cir.2006); *Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 100 (2d Cir.2005); *Rosen v. North Shore Towers Apts., Inc.,* 2011 WL 2550733, \*2 (E.D.N.Y. June 27, 2011) (12(b)(1)). To survive a motion to dismiss pursuant to Rule 12, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 563, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. But, a pleading that offers only 'labels and conclusions' or a "formulaic recitation of the elements of a cause of action will not do." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement." *Id.* (quoting *Twombly,* 550 U.S. at 557.) Thus, while detailed factual allegations are not required, the pleading rules do require more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Twombly,* 550 U.S. at 555 (internal citations omitted).

The Supreme Court clarified the appropriate pleading standard in *Iqbal,* setting forth a two-pronged approach for courts deciding a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal,* 556 U.S. at 679. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting and citing *Twombly,* 550 U.S. at 556) (internal citations omitted).

**Defendant's Exhibits in Support of Motion:**

**\*3**  The defendant has annexed numerous exhibits to its motion papers, and the plaintiffs challenge them, stating that none of the exhibits have been presented to them "for review or discovery." DE[12] at 4. In deciding a 12(b)(6) motion, the court is confined to the four corners of the complaint, but may consider exhibits attached to the complaint or documents incorporated in it by reference. *See Platt v. Incorporated Vill. of Southampton,* 2009 WL 3076099, \*3 (E.D.N.Y. Sept.21, 2009) (citing *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 71 (2d Cir.1998) & *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–153 (2d Cir.2002)). The court "may also consider matters of which judicial notice may be taken." *Id.* (citing *Kramer v. Time Warner, Inc.,* 837 F.2d 767, 773 (2d Cir.1991)). I find that some exhibits are incorporated by reference in the Complaint and are properly before the court, and that other exhibits, notably documents from court proceedings regarding the summonses, are suitable for judicial notice.

I turn to the arguments regarding dismissal.

**Monell Claims:**

Although the Complaint does not specify Monell liability, the lawsuit is brought under Section 1983, and the only defendant is the Town, a municipal entity. Thus, the concept of Monell liability is inherent in the claims. The defendant urges that the Complaint does not adequately set forth allegations in regard to Monell liability and that the entire Complaint should be dismissed on that ground.

To prevail on a Section 1983 claim against a municipal entity, a plaintiff must show: " '(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right;

(3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury.' " *Jones v. Nassau County Correctional Inst.,* 2014 WL 1277908, *4 (E.D.N.Y. Mar.26, 2014) (quoting *Roe v. City of Waterbury,* 542 F.3d 31, 36 (2d Cir.2008); *see also Connick v. Thompson,* ––– U.S. ––––, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011) ("Plaintiffs who seek to impose liability on local governments under Section 1983 must prove that 'action pursuant to official municipal policy' caused their injury." (quoting *Monell v. Dept. of Social Servs. of the City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611(1978)). Thus, "a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven,* 691 F.3d 72, 80 (2d Cir.2012). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a respondeat superior basis for the tort of its employee." *Id.; see also Connick,* 131 S.Ct. at 1350 (holding that under Section 1983, governmental bodies are not vicariously liable for their employees' actions); *Los Angeles County, Cal. v. Humphries,* ––– U.S. ––––, 131 S.Ct. 447, 452, 178 L.Ed.2d 460 (2010) ("[A] municipality cannot be held liable solely for the acts of others, e.g., solely because it employs a tortfeasor." (quotations and citation omitted)). " 'A municipal policy may be pronounced or tacit and reflected in either action or inaction.' " *Jones,* 2014 WL 1277908 at *5 (quoting *Cash v. County of Erie,* 654 F.3d 324, 333 (2d Cir.2011)). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick,* 131 S.Ct. at 1359. In addition, municipal liability can be established "by showing that a policymaking official ordered or ratified the employee's actions—either expressly or tacitly." *Jones,* 691 F.3d at 81.

**\*4** While the Complaint does not specifically identify anyone as a policymaker, it is replete with references to the actions taken by Town Council members and nameless "Town officials." The Town Attorney is also mentioned, as is "high ranking Town Consultant Bob Fonti." The plaintiffs argue that the allegations suffice to suggest a policy of retribution against them by Town officials, and I agree. While the Complaint is not a model of pleading in the Monell context, the plaintiffs allege facts from which it could be plausibly inferred that a custom or policy of the Town caused the alleged violations. *See Jones v. Bay Shore Union Free School Dist. .,* 947 F.Supp.2d 270, 282 (E.D.N.Y. May 28, 2013) (citing *Harris v. Westchester Cnty. Dep't of Corr.,* 2008 WL 953616,

at *11 (S.D.N.Y. Apr.3, 2008)). Accordingly, the defendants' motion to dismiss Plaintiff's Section 1983 claims against the Town based upon Monell liability should be denied.

**Application of Rooker–Feldman Doctrine:**
The defendant recounts the history of the summonses and Mrs. LaVertu's guilty plea in regard to the C of O summons, and argues that, under the Rooker–Feldman doctrine, claims predicated on allegedly baseless summonses should be dismissed.

"Pursuant to what is commonly known as the Rooker–Feldman doctrine, federal district courts lack subject matter jurisdiction over suits that are, in substance, appeals from state court judgments." *Brown v. Wells Fargo Bank, N.A.,* 2014 WL 1248022, *2 (E.D.N.Y. Mar.24, 2014) (citing *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 414–415, 44 S.Ct. 149, 68 L.Ed. 362,(1923); *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 476, 103 S.Ct. 1303, 75 L.Ed.2d 206, (1983); *Hachamovitch v. DeBuono,* 159 F.3d 687, 693 (2d Cir.1998) ("The Rooker–Feldman doctrine provides that the lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment.").

The doctrine is limited to " 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.' " *Brown,* 2014 WL 1248022 at *2 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454, (2005). There are four requirements for the application of Rooker–Feldman: (1) the federal court plaintiff must have lost in state court; (2) the plaintiff's injuries must be caused by the state court judgment; (3) the plaintiff's claims must invite the district court to review and reject the state court judgment; and (4) the state court judgment must have been rendered prior to the commencement of the district court proceedings. *Id.* (citing *Hoblock v. Albany County Bd. of Elections,* 422 F.3d 77, 85 (2d Cir.2005). "The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive." *Id.* If all four requirements are met, the case must be dismissed.

**\*5** Here, the defendant relies on Jennifer LaVertu's plea of guilty in the County District Court as the relevant lower court proceeding. It would appear from the pleadings and the motion papers that proceedings regarding the Conditional

Discharge and Declaration of Delinquency are ongoing in state court, and I recommend a finding that any reference to the Rooker Feldman doctrine here is premature. While LaVertu's entry of the guilty plea demonstrates that her claim that the summons was baseless is futile, there are still issues about how she can correct the problems that the summons was based on. Further, the plaintiffs do not appear to be complaining of injuries from the District Court ruling, nor are they asking this court to review and reject that ruling. Thus, the complaint should not be dismissed on Rooker–Feldman grounds.

**First Amendment Claims:**
The defendant argues that the plaintiffs fail to state a viable claim for First Amendment violations because plaintiffs' exercise of First Amendment rights was not chilled by any Town action, a requirement of First Amendment retaliation claims. *See* DE[11–11], Mem. in Support at 7. The plaintiffs argue that the chilling element is not necessary and that they have alleged sufficient harm to meet pleading standards. The defendant further argues that, to the limited extent that actual chilling is not necessary, the plaintiffs have not alleged sufficient concrete harm.

To state a claim of retaliation, plaintiffs generally must plead that (1) they have an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by their exercise of that right; and (3) defendants' actions effectively chilled the exercise of their First Amendment right. *Butler v. City of Batavia,* 323 Fed. Appx. 21, 23(2d Cir.2009) (quoting *Curley v. Village of Suffern,* 268 F.3d 65, 73 (2d Cir.2001)). The elements of a First Amendment retaliation claim have also been phrased without reference to a chilling requirement, as requiring the plaintiff to prove "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff; and (3) that there was a causal connection between the protected speech and the adverse action." *Scott v. Coughlin,* 344 F.3d 282, 287 (2d Cir.2003). While some decisions in the Second Circuit, like *Butler,* have required that plaintiffs prove that the adverse actions chilled the exercise of their First Amendment rights (*see Grossi v. City of New York,* 2009 WL 4456307, *7 n. 4 (E.D.N.Y. Nov.30, 2009) (citing cases)), other courts have found that the chilling element is required only "in cases where a plaintiff states no harm independent of the chilling of his speech." *See Puckett v. City of Glen Cove,* 631 F.Supp.2d 226, 239 (E.D.N.Y. June 30, 2009).

For purposes of this motion, I suggest a finding that the plaintiff, or at least Jennifer LaVertu, engaged in activities protected by the First Amendment and that the Complaint adequately alleges retaliatory motive as to most, but not all, of the Town's acts. I focus for the most part on determining whether the Complaint adequately alleges concrete, specific harm.

**\*6** The Second Circuit has recognized that "in certain situations a showing of some other form of concrete harm may substitute for 'actual chilling,' " *Zherka v. Amicone,* 634 F.3d 642, 643 (2d Cir.2011). The *Zherka* court explained:

"To state a claim under Section 1983, a plaintiff must allege facts indicating that some official action has caused the plaintiff to be deprived of his or her constitutional rights —in other words, there is an injury requirement to state the claim." *Colombo v. O'Connell,* 310 F.3d 115, 117 (2d Cir.2002) (per curiam). Various forms of harm have been accepted as satisfying this injury requirement in the context of a claim that a public official has injured the plaintiff in retaliation for her exercise of her First Amendment rights.

"We have described the elements of a First Amendment retaliation claim in several ways, depending on the factual context." *Williams v. Town of Greenburgh,* 535 F.3d 71, 76 (2d Cir.2008). For example, public employees must show adverse employment action. *Id.* For their part, inmates must show "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising *645 ... constitutional rights." *Gill v. Pidlypchak,* 389 F.3d 379, 381 (2d Cir.2004) (internal quotation marks and citation omitted).

By contrast, private citizens claiming retaliation for their criticism of public officials have been required to show that they suffered an "actual chill" in their speech as a result. *Id.* (citing *Spear v. Town of W. Hartford,* 954 F.2d 63, 68 (2d Cir.1992)). However, in limited contexts, other forms of harm have been accepted in place of this "actual chilling" requirement. *See, e .g., Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 91 (2d Cir.2002) (alleging retaliatory revocation of building permit); *Gagliardi v. Vill. of Pawling,* 18 F.3d 188, 195 (2d Cir.1994) (alleging retaliatory failure to enforce zoning laws); *see also Gill,* 389 F.3d at 383 (explaining that "the *Gagliardi* plaintiffs' retaliation claim apparently survived a motion to dismiss because ... they adequately pleaded non-speech injuries"). Despite these limited exceptions, as a

general matter, First Amendment retaliation plaintiffs must typically allege "actual chilling."

634 F.3d at 644–45.

The court in *Zherka* found that a claim of defamation *per se* under state law was not sufficient to satisfy the harm element on a First Amendment retaliation claim. Such harm, they explained, must be concrete or tangible, not assumed, as is the case in defamation per se claims. In private citizen cases, "various forms of concrete harm have been substituted for the 'actual chilling' requirement." *Brink v. Muscente,* 2013 WL 5366371, *7 (S.D.N.Y. Sept.25, 2013) (citing *Zherka,* 634 F.3d at 643, 645–46; *see also Puckett,* 631 F.Supp.2d at 239 (E.D.N.Y.2009) (chilling element is required only "in cases where a plaintiff states no harm independent of the chilling of his speech"); *Tomlins v. Village of Wappinger Falls Zoning Bd. of Appeals,* 812 F.Supp.2d 357, 371 (S.D.N.Y.2011) (deeming allegations of retaliatory denial of building permits and a denial of an unconditional variance sufficient concrete harms to substitute for chilling effects); *Hafez v. City of Schenectady,* 894 F.Supp.2d 207, 222 (N.D.N.Y. Apr.19, 2012) (citing *Gagliardi v. Village of Pawling,* 18 F.3d 188 (2d Cir.1994) (alleging harm in the form of municipal defendants' misapplication of zoning code in retaliation for plaintiffs' exercise of free speech rights))). Where a plaintiff has sufficiently alleged a concrete harm, and in the absence of a subjective chilling requirement, Second Circuit courts have only required a showing (1) that the First Amendment protected the plaintiff's conduct, and (2) that "defendants' conduct was motivated by or substantially caused by [the plaintiff's] exercise of speech." *Hafez,* 894 F.Supp.2d at 222 (citing *Gagliardi,* 18 F.3d at 194 (citation omitted)); *see also Tomlins,* 812 F.Supp.2d at 371 n. 11. Contrary to the plaintiff's argument, some concrete harm must be shown, even if chilling is not.

**\*7** Here, the plaintiffs have suggested that their free speech rights are implicated, alleging that in issuing summonses to the plaintiffs, the Town had "the clear intention of deterring Free Speech activities," but they do not allege any actual chilling. Compl. ¶ 2. Instead, the complaint can be read to allege harm flowing primarily from the YouTube video, unwarranted summonses and interference with Mr. LaVertu's plumbing license.

The allegations of harm allegedly done by the rebuttal video are too vague and conclusory to constitute the concrete harm needed to make out a First Amendment Retaliation claim. The Complaint alleges that the video was a "personal attack"

on Mrs. LaVertu and that it released information about her tax records. I have not viewed the videos, although they are referenced in the Complaint and provided as exhibits to the motion, but limit my consideration, on this motion to dismiss, to the allegations set forth in the Complaint itself. The posting of the video does not per se suggest retaliatory motive. Mrs. LaVertu had posted her own YouTube video and a rebuttal in kind was not so surprising. The fact that the Town posted its rebuttal in the same forum used by Mrs. LaVertu does not in and of itself give rise to an inference of retaliatory motive or concrete harm. The content of the video as described in the Complaint, as distinct from the fact of the posting itself, also fails to satisfy the standard of harm required. If it did disclose the LaVertus' property taxes (and I assume that it did), it only aired information readily accessible as a matter of public record. No details are given in the Complaint as to the nature of the personal attack beyond the tax information, and the vague allegations about discussions on various social media and other websites add nothing to the allegation of harm. While Mrs. LaVertu may have felt "personally attacked, "[h]urt feelings or a bruised ego are not by themselves the stuff of constitutional tort." *Zherka,* 634 F.3d at 645–46 (citing *Sadallah v. City of Utica,* 383 F.3d 34, 38 (2d Cir.2004) 0. Although the Second Circuit has not decided if "allegations of emotional and psychological harm would establish compensable injury in a First Amendment retaliation claim," I recommend that the allegations in regard to the video do not establish such a compensable injury. *See Zherka,* 634 F.3d at 646–47.

The vague allegations about the plumbing license similarly do not rise to a level sufficient to make out a claim of constitutional tort. There are no allegations of any concrete harm to Mr. LaVertu caused by any Town behavior in this regard, harm such as loss of business or harm to reputation [1]. Thus, those claims do not provide the actual harm necessary for a First Amendment retaliation claim.

[1]    I do not take a position on whether loss of business or injury to reputation would constitute such concrete harm.

Nor do the allegations about the summonses suggest sufficiently concrete or tangible harm so as to satisfy the pleading standards for a First Amendment retaliation claim. The retaining wall summons, even viewed as baseless, is too de minimis in terms of harm for First Amendment retaliation purposes. [2] If, on the other hand, the court accepted the plaintiffs' claim that the Certificate of Occupancy summons

was baseless, it might rise to such a level because it carried the potential for greater consequences. The record before the court, however, does not allow an inference of baselessness to be drawn. As noted, the court can take judicial notice of the County court documents regarding that summons, and those documents reflect the fact that Mrs. LaVertu entered a plea of guilty to the summons. This court will not infer baselessness under that circumstance. The issue of whether a Letter in Lieu should have been issued—an issue that presumably will be decided by the County court—is still open, but there is nothing to support an inference that the summons itself was baseless. The plaintiffs argue that even if the summonses were justified, their retaliation claim is viable if the Town's motivation for enforcing the Code was retaliatory. *See* DE[12] at 19. They do not, however, cite any law to support that conclusion, which is at odds with the caselaw setting forth the elements of a First Amendment claim as requiring more than retaliatory motive.

2    The circumstances of the retaining wall summons are discussed in the context of the Equal Protection claim *infra*.

**\*8** In their memorandum in opposition to the motion, the plaintiffs argue that Town Attorney Jacob Turner's refusal to conference with them about the ongoing Letter in Lieu dispute is "the essence of First Amendment Retaliation," but that allegation is not in the Complaint, and I do not address it. *See* DE [12] at 18.

Finally, the Complaint alleges that Jennifer LaVertu has experienced "severe reoccurring headaches, sleeplessness and numbness in her fingers and along the left side of her body," and that doctors diagnosed stress as a cause for her physical complaints. Compl., ¶ 63. That stress was allegedly cause by the Town's retaliatory acts. As noted earlier, "[h]urt feelings or a bruised ego are not by themselves the stuff of constitutional tort." *Zherka,* 634 F.3d at 645–46. These allegations, however, describe physical harm. Neither party addresses the issue of whether these allegations of physical distress can substitute for the chilling of rights as concrete harm in a First Amendment retaliation context, and I have located no cases in this Circuit that have so found. I recommend that the type of harm that satisfies the concrete harm requirement not be extended to this sort of injury, which is quite different from the forms of concrete harm distinct from the chilling of speech that have been found in other cases ³ . See, e.g., *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 91 (2d Cir.2002) (retaliatory

revocation of plaintiff's building permit); *Gagliardi v. Village of Pawling,* 18 F.3d 188, 195 (2d Cir.1994) (retaliatory failure to enforce zoning laws); *see also Tomlins,* 812 F.Supp.2d at 239 (allegations of retaliatory denial of building permitss and denial of unconditional variance sufficient concrete harms to substitute for chilling effects); *Puckett,* 631 F.Supp.2d 22(First Amendment retaliation claim adequately pled where plaintiff alleged harm to value of her property as result of defendants' retaliatory conduct).

3    I note that if District Judge Feuerstein disagrees, and finds that these allegations do suffice, that the harm is to Mrs. LaVertu only. Mr. LaVertu has alleged no such harm to himself. Indeed, Mr. LaVertu's role in the events outlined in the Complaint, except for the allegations about his plumbing business, and the impact of those events on him, is not clear.

The Second Circuit has observed that "the arena of political discourse can at times be rough and tough. Public officials must expect that their decisions will be subjected to withering scrutiny from the populace. A public official's response to that criticism is subject to limits, but the injury inflicted by that response must be real. Without that limitation, the Constitution would change from the guarantor of free speech to the silencer of public debate." *Zherka,* 634 F.3d at 647. The Complaint here does not sufficiently set forth a real injury in First Amendment terms, and I recommend that the First Amendment Retaliation claim be dismissed without prejudice and that the plaintiffs be permitted to replead.

**Substantive Due Process Claim:**
The plaintiffs allege violations of their substantive due process rights. " ' In the zoning context, a government decision regulating a landowner's use of his property offends substantive due process if the government action is arbitrary or irrational. Government regulation of a landowner's use of his property is deemed arbitrary or irrational, and thus violates his right to substantive due process, only when government acts with no legitimate reason for its decision.' " *Ahmed v. Town of Oyster Bay,* 2014 WL 1092363, \*10 (E.D.N.Y. Mar.18, 2014) (quoting *Southview Assoc., Ltd. v. Bongartz,* 980 F.2d 84, 102 (2d Cir.1992) (citations and quotation marks omitted); *see also Merry Charters, LLC v. Town of Stonington,* 342 F.Supp.2d 69, 78 (D.Conn.2004) (explaining that "denial by a local zoning authority violates substantive due process standards only if the denial is so outrageously arbitrary as to constitute a gross abuse of governmental

authority"). "As for substantive due process, '[i]n the context of a zoning dispute, to state a claim ... for deprivation of 'property' without due process of law a person must establish that he had a valid 'property interest' in some benefit that was protectible under the fourteenth amendment at the time he was deprived of the benefit.' " *Zito v. Town of Babylon,* 534 Fed. Appx. 25, 27 (2d Cir.2013) (citing *Brady v. Town of Colchester,* 863 F.2d 205, 211–12 (2d Cir.1988)). The defendant argues that the property or liberty interest claimed by the LaVertus is nowhere stated in the Complaint. That is true, but I assume for purposes of this motion that here, the property interest at issue is the LaVertu's use and enjoyment of their home, and I assume that they are alleging that the summonses against the property have interfered with that use and enjoyment. However, even if such a property interest is inferred, this claim is not ripe under the test set out in *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126(1985), and should be dismissed without prejudice to renewal.

**\*9** Following *Williamson,* the Second Circuit applies " 'a two-pronged test for assessing the ripeness of takings-type claims.' " *Zito,* 534 Fed. Appx. at 28 (quoting *Southview Associates, Ltd. v. Bongartz,* 980 F.2d 84, 95–96 (2d Cir.1992) (internal citations omitted)). "The first prong requires the government entity charged with enforcing the regulations at issue to have rendered a final decision. The second prong requires the plaintiff to have sought compensation if the state provides a reasonable, certain and adequate provision for obtaining compensation." *Id.* (internal citations and quotation marks omitted); *see also Dougherty,* 282 F.3d at 88. The Second Circuit applies Williamson's "final decision" requirement to both substantive and procedural due process claims in the land-use context. *Id.* (citing *Dougherty,* 282 F.3d at 88–89 (procedural due process), *Southview,* 980 F.2d at 96–97 (substantive due process)). Here, the dispute about the C of O/Letter in Lieu is ongoing in the County court, with no final determination yet reached by the County authorities. It is also unclear whether the LaVertus have initiated any appeals or started an Article 78 proceeding. Thus, this court cannot find that the claim is ripe and I recommend that it be dismissed without prejudice.

**Equal Protection Claim:**

The plaintiffs' equal protection claim apparently arises from their contention that they were issued a summons for the retaining wall and their neighbors were not. As noted earlier, they allege that the retaining wall is on the boundary line between their neighbor's property and their own, and that the neighbors helped build the wall, but their neighbors were never issued a summons for lack of a permit, while they were[4]. Complaint, ¶¶ 32–34. This claim can be analyzed as selective prosecution or class of one discrimination. Selective prosecution plaintiffs "have been required to show both (1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. *Mental Disability Law Clinic, Touro Law Center v. Hogan,* 519 Fed. Appx. 714, 718 (2d Cir.2013) (citing *Cobb v. Pozzi,* 363 F.3d 89, 110 (2d Cir.2004) (quoting *Harlen Assocs. v. Inc. Vill. of Mineola,* 273 F.3d 494, 499 (2d Cir.2001))).

4    The defendants vigorously deny this, and have submitted photographs and other evidence that the wall is on the LaVertus' property. I do not address the merits of the plaintiffs' allegation. If the case proceeds, they will have to prove their allegations. If they replead the Complaint, they may wish to amend allegations that time has proven invalid, or they may wish to adhere to their original allegations.

Under class-of-one discrimination doctrine, " 'when it appears that an individual is being singled out by the government, the specter of arbitrary classification is fairly raised, and the Equal Protection Clause requires a rational basis for the difference in treatment." *Id.* (quoting *Engquist v. Oregon Dep't of Agric.,* 553 U.S. 591, 602, 975, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008) (internal quotation marks omitted)). A plaintiff proceeding on a "class of one" equal protection theory must plead " 'an extremely high degree of similarity between themselves and the persons to whom they compare themselves.' " *Sacher v. Village of Old Brookville,* 2013 WL 4780046, *7 (E.D.N.Y. Sept.4, 2013) (quoting *Ruston v. Town Bd. for Vill. of Skaneateles,* 610 F.3d 55, 59 (2d Cir.2010)). In particular, a class-of-one plaintiff must establish that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Id.* (citing *Adam J. v. Village of Greenwood Lake,* 2013 WL 3357174 *7 (S.D.N.Y.2013); *Viteritti v. Incorporated Vill. of Bayville,* 918 F.Supp.2d 126, 135 (E.D.N.Y.2013); *MacPherson v. Town*

*of Southampton,* 738 F.Supp.2d 353, 371 (E.D.N.Y.2010)). "To state a class of one equal protection claim in a zoning context, a plaintiff must make more than a general statement of treatment different from those similarly situated. Even the mention of particular properties alleged generally to be similar is insufficient to state a claim. Instead, the properties cited must be so similar that 'no rational person could see them as different ..." *Sacher,* 2013 WL 4780046 at*7(quoting *Ruston,* 610 F.3d at 60). Thus, a plaintiff alleging unfair treatment in a zoning/building context, must plead specific examples of applications and hearings that were similar to plaintiff's application and demonstrative of the disparate treatment alleged. *Id.* (citing *Amid v. Village of Old Brookville,* 2013 WL 527772 *6 (E.D.N.Y.2013).

**\*10** Under either theory, the plaintiffs have sufficiently alleged a claim based on the retaining wall summons. The allegations about their neighbors are sufficient to withstand the motion to dismiss on an equal protection claim based on the wall, because the neighbors are valid comparators. To the extent, if any, that they intended a broader claim arising from their being issued with summonses while other Town residents with similar violations were not, such a claim must be dismissed because no comparators other than their neighbors are identified. Further, their argument that the Town Attorney's refusal to conference with them is a violation of their Equal Protection rights (see DE [12] at 23) will not be considered, because that allegation does not appear in the Complaint.

### OBJECTIONS

A copy of this Report and Recommendation is being sent to counsel for the parties by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72; Fed.R.Civ.P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Caidor v. Onondaga County,* 517 F.3d 601, 604 (2d Cir.2008); *Cephas v. Nash,* 328 F.3d 98, 107 (2d Cir.2003).

### All Citations

Not Reported in F.Supp.3d, 2014 WL 2475566

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

**History (3)**

**Direct History (2)**

1. LaVertu v. Town of Huntington
   2014 WL 2475566 , E.D.N.Y. , Apr. 04, 2014

*Report and Recommendation Adopted in Part by*

2. Lavertu v. Town of Huntington
   2014 WL 2506217 , E.D.N.Y. , June 02, 2014

**Related References (1)**

3. LaVertu v. Town of Huntington
   2014 WL 6682262 , E.D.N.Y. , Nov. 24, 2014

**Filings**

There are no Filings for this citation.

2014 WL 2506217
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

John LAVERTU and Jennifer Lavertu, Plaintiffs,
v.
The TOWN OF HUNTINGTON, Defendant.

No. 13–CV–4378 (SJF).
|
Signed June 2, 2014.

**Attorneys and Law Firms**

Steven A. Morelli, The Law Offices of Steven A. Morelli,
P.C., Garden City, NY, for Plaintiffs.

Paul Bartels, Garden City, NY, Thelma N. Neira, Town of
Huntington, John C. Bennett, Gathman & Bennett, LLP,
Huntington, NY, for Defendant.

**OPINION AND ORDER**

FEUERSTEIN, District Judge.

 *1  Before the Court is the Report and Recommendation
("Report") of Magistrate Judge William D. Wall, dated April
4, 2013, recommending that defendant Town of Huntington's
motion to dismiss be granted as to plaintiffs' First Amendment
and Due Process claims and denied as to plaintiffs' Equal
Protection Claim. The Report also recommends that plaintiffs
be given leave to replead. Both parties timely filed objections.
For the following reasons, the Report is adopted to the extent
set forth below and defendant's motion to dismiss pursuant to
Federal Rule of Civil Procedure 12(b)(6) is **GRANTED** in
part and **DENIED** in part.

**I. Case History**
On August 2, 2013, plaintiffs Jennifer LaVertu and John
LaVertu ("plaintiffs") filed a complaint against defendant
Town of Huntington ("Town") alleging that the Town violated
their constitutional rights. Specifically, plaintiffs allege that
after they released a video on YouTube opposing the Town's
proposed housing project, the Town retaliated against them
by releasing its own rebuttal YouTube video, targeting
plaintiffs' home with baseless summonses and interfering
with John LaVertu's plumbing license. The complaint alleges

that the Town's retaliatory acts infringed upon plaintiffs' First
Amendment, Equal Protection and Substantive Due Process
rights.

Defendant filed a motion to dismiss plaintiffs' complaint
pursuant to Federal Rule of Civil Procedure 12(b)(6)
for failure to state a claim, which was referred to
Magistrate Judge Wall to report and recommend. The Report
recommends that defendant's motion to dismiss the case,
pursuant to *Monell v. Dep't of Social Services of City of
New York,* 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d
611 (1978), be denied on the ground the complaint contains
plausible allegations that a municipal custom or policy caused
the violations. The Report also recommends that the case
not be dismissed under the *Rooker–Feldman* doctrine . [1] As
to plaintiff's First Amendment retaliation claim, Magistrate
Judge Wall recommends it be dismissed without prejudice
and that plaintiffs be permitted to replead to allege a concrete
harm. As to plaintiffs' substantive due process claim, the
Report recommends it be dismissed without prejudice on the
ground it is unripe and that it be raised anew after final
judgment by the Huntington Town Court, Third District. The
Report also recommends that plaintiffs' equal protection claim
go forward as a class-of-one violation based on the retaining
wall summons.

[1]     Pursuant to the *Rooker–Feldman* doctrine, a federal
        court lacks subject matter jurisdiction over suits
        that are, in substance, appeals from state court
        judgments. *Rooker v. Fidelity Trust Co.,* 263 U.S.
        413, 414–415, 44 S.Ct. 149, 68 L.Ed. 362 (1923);
        *D.C. Court of Appeals v. Feldman,* 460 U.S. 462,
        476, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

**II. Discussion**

**A. Standard of Review**
Title 28 U.S.C. § 636(b)(1)(C) provides that a "judge of the
court shall make a de novo determination of those portions of
the report or specified proposed findings or recommendations
to which objection is made." *See also* Fed.R.Civ.P. 72(b)
(3) ("The district judge must determine de novo any part
of the magistrate judge's disposition that has been properly
objected to."). After reviewing a report, a district court
"may accept, reject, or modify, in whole or in part, the
findings or recommendations made by the magistrate judge."
28 U.S.C. § 636(b)(1)(C). "[I]n providing for a "de novo
determination" ... Congress intended to permit whatever
reliance a district judge, in the exercise of sound judicial

discretion, chose to place on a magistrate's proposed findings and recommendations." *United States v. Raddatz,* 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980).

**B. Analysis**

*Monell Liability*

**\*2** Defendant objects to the Report's finding that plaintiffs stated a viable *Monell* claim on the ground plaintiffs failed to plead deprivation of a constitutional right or damages.

In a motion to dismiss, " '[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Kimbrough v. Town of Dewitt Police Dep't,* No. 03 Civ. 08, 2010 WL 3724121, at \*3 (N.D.N.Y. Mar. 8, 2010) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). The complaint alleges that plaintiffs released their YouTube video opposing the housing project on January 28, 2011. Approximately eight days later, on February 5, 2011, the Town released its own video entitled "Huntington Speaks" using an alternative YouTube account. At the end, Huntington Town Council members take credit for the video, which publicized information about plaintiffs' real estate taxes. Compl. ¶¶ 17–21. Councilwoman Susan Bernard allegedly told plaintiffs that the rebuttal video was specifically made in response to plaintiffs' video criticizing the Town. *Id.* at ¶ 27.

On June 6, 2011, the Town voted on and approved a change in zoning to accommodate the housing project. *Id.* at ¶ 29. The next day, June 7, 2011, plaintiffs received a summons for a stone retaining wall on the boundary line between plaintiffs and their neighbor, yet the neighbor was not ticketed. *Id.* at ¶ 32. After plaintiffs proved that the neighbors owned the wall, the summons against plaintiff was dismissed, however, the neighbor was not ticketed. *Id.* at ¶ 34.

On June 7, 2011, plaintiffs were also ticketed because they had no certificate of occupancy for their home. *Id.* at ¶ 35. On February 14, 2012, they requested a town inspection to obtain approval for a "letter-in-lieu" of a certificate of occupancy (the "Letter"). On February 21, 2012, the inspector issued a Final Inspection for Construction prior to 1934, which found that the structure was safe and the Letter was approved. *Id.* at ¶¶ 36, 37. According to the complaint, nearly eight (8) months later and without reason or justification, Jennifer LaVertu was advised that the inspector's Letter had been "discredited." [2] *Id.* at ¶ 38. On April 4, 2012, John LaVertu saw the inspector who approved the Letter who told plaintiff that he was being

written up for not doing his job when he inspected plaintiffs' home and that the subsequent denial of the Letter was part of a "witch-hunt" against plaintiffs. *Id.* at ¶ 39. After speaking with the inspector, John LaVertu called the Town official, who advised plaintiff it was not safe to speak on his Town issued cell phone and that he would call plaintiff back from his private cell phone. *Id* . at ¶ 40. The Town official called plaintiff and advised him that the Town attorney, John Leo, had approached him and demanded the inspector be written up. The Town official vehemently disagreed with Mr. Leo, but Mr. Leo insisted, stating that it was an order from "higher ups," specifically Patricia DelCol, Deputy Supervisor for the Town of Huntington. *Id.* at ¶¶ 41, 42. The Town official stated, "in my 24 years I have never seen [the Town] go after anyone so strongly," in reference to plaintiffs. *Id.* at ¶ 43. After John LaVertu explained that plaintiffs thought the Town had retaliated against them after they objected to the housing project, the official stated, "yep, that is what they do, now I understand, but I have never seen them go after anyone like this." *Id.* at ¶ 44.

[2]  Plaintiffs allege that Jennifer LaVertu found out nearly "eight (8) months" later that the letter-in-lieu had been discredited (Compl.¶ 38), but according to the next allegation, John LaVertu saw the inspector on April 4, 2012 or approximately two (2) months after the inspection. *Id.* at ¶ 39.

**\*3** Accepting the foregoing as true, plaintiffs' allegations raise an inference that the Town had a policy or custom of targeting private citizens who criticized the Town's actions. Accordingly, that portion of the Report which recommends denying the Town's motion to dismiss this case based on *Monell* is adopted and defendant's objections are overruled.

*First Amendment Retaliation Claim*

Plaintiffs object to the Report's recommendation that their First Amendment claim be dismissed without prejudice and they be permitted to replead to allege a concrete harm. They argue that the summonses issued for the retaining wall and certificate of occupancy constitute sufficient harm to sustain their retaliation claim.

To establish a retaliation claim under § 1983 in cases involving criticism of public officials by private citizens, a plaintiff must show that "(1) his conduct was protected by the First Amendment and (2) such conduct prompted or substantially caused defendant's action ." *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals,* 282 F.3d 83,

91 (2d Cir.2002) (internal citations omitted). In addition, the Second Circuit generally "impose[s] an actual chill requirement for First Amendment retaliation claims." *Gill v. Pidlypchak,* 389 F.3d 379, 381 (2d Cir.2004). *See Zherka v. Amicone,* 634 F.3d 642, 645 (2d Cir.2011) ("[P]rivate citizens claiming retaliation for their criticism of public officials have been required to show that they suffered an 'actual chill' in their speech as a result.") (citing *Gill,* 389 F.3d at 381); *Spear v. Town of West Hempstead,* 954 F.2d 63, 68 (2d Cir.1992) (First Amendment retaliation claim properly dismissed where plaintiff continued to speak out after government's allegedly adverse actions).

"However, in limited contexts, other forms of harm have been accepted in place of this 'actual chilling' requirement." *Zherka,* 634 F.3d at 645. Thus, the Second Circuit has described "the elements of a First Amendment retaliation claim in several ways, depending on the factual context." *Williams v. Town of Greenburgh,* 535 F.3d 71, 76 (2d Cir.2008). *See Dougherty,* 282 F.3d at 91 (finding adequate harm where complaint alleged that plaintiff's building permit was revoked days after he opposed municipality's motion to dismiss); *Gagliardi v. Vill. of Pawling,* 18 F.3d 188, 195 (2d Cir.1994) (upholding retaliation claim where defendant municipality refused to enforce zoning laws on behalf of plaintiffs); *Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals,* 812 F.Supp.2d 357, 371 n. 17 (S.D.N.Y.2011) (retaliation claim stated where plaintiff alleged that zoning board denied building permit and an unconditional variance in retaliation for prior litigation against municipality). "Despite these limited exceptions, as a general matter, First Amendment retaliation plaintiffs must typically allege 'actual chilling.' " *Zherka,* 634 F.3d at 645.

Plaintiffs contend that the fact that the Town cited them for the retaining wall, which actually belongs to their neighbors, is evidence of a concrete harm. Plaintiffs had to respond to the summons, execute a land survey and coordinate with the Town Inspector to prove that the retaining wall was not theirs. [3] These allegations do not amount to First Amendment harm.

[3]     In their objections, plaintiffs argue that had plaintiffs failed to respond to the summons, a warrant would have issued for their arrests and they would have been imprisoned. DE 21 p. 8. They argue that Magistrate Judge Wall overlooked these scenarios by finding that the retaining wall summons was de minimus. *Id.* I disagree. First

Amendment harm cannot be based on speculation or supposition.

**\*4** As to the summons for lack of a Certificate of Occupancy, plaintiffs advise the Court that the District Court of the County of Suffolk, Third District ("the Town court") dismissed the pending action against Jennifer LaVertu on her motion to vacate the Conditional Discharge and/or dismiss a Declaration of Delinquency. DE 21–2 p. 23. Because defendant objects to Magistrate Judge Wall's recommendation that the Court *sua sponte* grant plaintiffs leave to replead their First Amendment claim to allege a concrete harm, the recommendation is adopted to the extent that plaintiffs' First Amendment retaliation claim is dismissed without prejudice and if they choose, plaintiffs may move for leave to amend their complaint to give defendant an opportunity to oppose the motion.

### Substantive Due Process Claim

Plaintiffs object to the Report's recommendation that their substantive due process claim be dismissed without prejudice because the certificate of occupancy/Letter issues had not been decided by the town court. As discussed above, while this motion was pending, the Town court rendered a decision granting plaintiff Jennifer LaVertu's Town court motion and holding that she satisfied her promises in the Conditional Discharge. DE 21–2 p. 25. Plaintiffs' objections contain allegations about the decision that are not part of the complaint. Accordingly, the Report is adopted to the extent plaintiffs' Due Process claim is dismissed without prejudice.

### Equal Protection Claim

Defendant objects to the Report's recommendation that plaintiffs' Equal Protection claim be allowed to proceed as a class-of-one action based on the summons for the retaining wall.

Defendant complains that the Report did not address *People v. Goodman,* 31 N.Y.2d 262, 338 N.Y.S.2d 97, 290 N.E.2d 139, 143 (N.Y.1972), which held that a claim of discriminatory enforcement "should not be considered as an affirmative defense to [a] criminal charge ... but, rather, should be addressed to the court before trial as a motion to dismiss the prosecution upon constitutional grounds." The Town argues that plaintiffs failed to make such a motion.

" 'By definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a

2014 WL 2506217

federal constitutional right.' " *Pilchman v. Dep't of Defense,* 154 F.Supp.2d 415, 421 (E.D.N.Y.2001) (quoting *F.D.I.C. v. Meyer,* 510 U.S. 471, 478, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)). Because plaintiffs bring their equal protection claim pursuant to the Fourteenth Amendment and 42 U .S.C. § 1983, federal law applies to their claim and therefore, they were not required to bring a motion to dismiss in state court prior to filing their federal complaint.

As the remainder of defendant's objections lack merit, the Report's recommendation that defendant's motion to dismiss be denied as to plaintiff's equal protection claim is adopted and, accordingly, defendant's motion is denied as to this claim.

### III. Conclusion

For the foregoing reasons, the Report is adopted to the extent indicated and accordingly, defendant's motion to dismiss this case on *Monell* grounds is denied. The motion is also denied with respect to plaintiffs' Equal Protection claim. The motion is granted for failure to state a claim as to plaintiffs' First Amendment Retaliation and Due Process claims and those claims are dismissed without prejudice.

**\*5 SO ORDERED.**

### All Citations

Not Reported in F.Supp.3d, 2014 WL 2506217

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

**History (3)**

**Direct History (2)**

1.  LaVertu v. Town of Huntington
2014 WL 2475566 , E.D.N.Y. , Apr. 04, 2014

*Report and Recommendation Adopted in Part by*

2.  Lavertu v. Town of Huntington
2014 WL 2506217 , E.D.N.Y. , June 02, 2014

**Related References (1)**

3.  LaVertu v. Town of Huntington
2014 WL 6682262 , E.D.N.Y. , Nov. 24, 2014

**Filings**

There are no Filings for this citation.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.



Positive
As of: November 13, 2025 1:55 PM Z

# *Perez v. Amato*

United States District Court for the Northern District of New York

June 13, 2013, Decided; June 13, 2013, Filed

No. 12-CV-623 (TJM/CFH)

**Reporter**
2013 U.S. Dist. LEXIS 100689 *

JOSE A. **PEREZ**, Plaintiff, v. MICHAEL J. **AMATO**, Sheriff; MICHAEL FRANKO, Jail Administrator; Defendants.

**Subsequent History:** Adopted by, Summary judgment granted, in part, summary judgment denied, in part by *Perez v. Amato, 2013 U.S. Dist. LEXIS 99607 (N.D.N.Y, July 17, 2013)*

## Core Terms

inmates, classification, confinement, mail, defendants', regulations, sex offender, housed, due process, segregation, conditions, protective custody, jail, administrative segregation, material fact, placement, proffered, quotation, slander, criminal history, notice, marks, qualified immunity, articulated, screening, sex, constitutional right, general population, summary judgment, sex offense

**Counsel:** [*1] JOSE A. PEREZ, Plaintiff, Pro se, Amsterdam, New York.

For Defendants: MURRY S. BROWER, ESQ., OF COUNSEL, LAW OFFICE OF THERESA PULEO, Albany, New York.

**Judges:** Christian F. Hummel, U.S. MAGISTRATE JUDGE.

**Opinion by:** Christian F. Hummel

## Opinion

**CHRISTIAN F. HUMMEL**

**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to *28 U.S.C. § 636(b)* and *N.D.N.Y.L.R. 72.3(c)*.

Chaim Jaffe

Plaintiff pro se Jose Perez ("Perez"), an inmate previously in custody at a local jail, brings this action pursuant to *42 U.S.C. § 1983* alleging that defendants, the Montgomery County Sheriff and Jail Administrator, violated his constitutional rights. Compl. (Dkt. No. 1). Presently pending is defendants' motion for summary judgment pursuant to *Fed. R. Civ. P. 56*. Dkt. No. 19. Perez has not responded to the present motion. For the following reasons, it is recommended that defendants' motion be granted in part and denied in part.[2]

## I. Failure to Respond

Perez did not oppose defendants' motion. "[J]udgment should not be entered by default against a pro se plaintiff who has not been given any notice that failure to respond will be deemed a default." *Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996)*. Defendants' provided such notice in the notice of motion, stating that Perez "must respond by affidavits or as otherwise provided in the rule, setting forth specific facts showing that there is a genuine issue of material fact for trial." Dkt. No. 19 at 1. Moreover, the Court provided notification to Perez regarding both the date of his response and the consequences of failing to respond. Dkt. No. 20. Perez even requested, and was granted, an extension to respond. Dkt. Nos. 21-22. Despite such notice and the extension, Perez failed to respond. Because Perez has not responded [*3] to raise any question of material fact, to the extent defendants have pled properly supported facts, such facts as set forth by defendants are accepted as true. See *Cusamano v. Sobek, 604 F. Supp. 2d 416, 452-453, 453 n.48 (N.D.N.Y. 2009)*; see also *N.D.N.Y.L.R. 7.1(a)(3)* ("The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.") (emphasis in original).

## II. Background

### A. Involuntary Protective Custody

Revised in January 2010, Montgomery County Correctional Facility ("Montgomery") had a specific policy regarding administrative segregation for protective custody. Dkt. No. 19-1 at 51, 54. After an inmate had undergone screening and classification, he could be assigned to protective custody, being locked in his cell for twenty-three hours a day for a sixty day period of time. Id. at 54. However, the inmate could seek review of said classification, through a written request to the jail administrator, after sixty days provided "there [wa]s no further threat to [the inmate's] safety . . . ." Id. If such a threat remained, the inmate's situation may be re-evaluated every thirty days until [*4] such time as the threat dissipated. Id.

---

[2] Defendants move for summary judgment contending that (1) Perez's Equal Protection claims were meritless; (2) they are protected by qualified immunity;(3) Perez has failed to allege a physical injury sufficient to grant him the damages he seeks and (4) [*2] Perez's state law claims need to be dismissed for his failure to comply with the notice of claim requirement. Defs Mem. of Law (Dkt. No. 19 at 6-15) at 4-9. Defendants fail to discuss the merit of Perez's inartfully pled *First Amendment* legal mail claims or any potential due process claims which, for the reasons stated *infra*, should not be dismissed.

Perez arrived at Montgomery on December 19, 2011 for a parole violation. Franko Aff. (Dkt. No. 19 at 36-42) § 2; Dkt. No. 19 at 48 (Montgomery New Admissions form indicating that Perez was detained for a parole violation). Upon arrival, all inmates are processed and evaluated for placement in the appropriate housing unit consistent with the policy outlined above. Franko Aff. ¶ 3; Id. ¶ 6 (explaining that classification officers consider an inmate's "past criminal history . . . and information if that person has been in the jail on other occasions," as well as interviewing the inmate). Perez's classification was determined after evaluating "the charges pending and his past history of [sex based] criminal offenses . . . [for which defendants concluded that Perez] was therefore considered to be vulnerable to injury from inmates housed in the regular population." Franko Aff. ¶ 5; see also Dkt. No. 19 at 58-61 (inmate classification form awarding (1) ten points for a request or requirement of administrative segregation for safety purposes; (2) three points for a previously being detained at Montgomery; (3) twenty points for current charges of a parole  [*5] warrant; (4) twenty points for a prior violent felony or sex offense; (3) various points for substance abuse and having a mental health history; and (4) twenty points for having a pending warrant regarding a violent felony or sex offense felony and determining that Perez required protective custody and close supervision despite a lack of any victimization history "due to convictions, previous, safety [and] security of facility.").

After spending approximately one day undergoing classification, on or about December 20, 2011, Perez received notification that Classification Officer Payne had administratively segregated Perez into involuntary "protective custody [hereinafter "IPC"] for his own personal safety." Dkt. No. 19 at 51; but cf Franko Aff. §§ 3-4 (indicating that Perez was placed into IPC on December 20, 2012 but that his classification was completed on December 26, 2011 whereupon he was still classified as an IPC inmate). Perez signed the Administrative Segregation Notice Form indicating that he was being placed in IPC for his own protection. Dkt. No. 19 at 51.

"In the late fall of 2010 and continuing into the winter and spring of 2011[] the inmate population of Montgomery . .  [*6] . was growing[; thus] the Sheriff and [Administrator] began to discuss how the rising population might impact the safety of inmates and . . . of corrections officers assigned to the various pods . . . ." Franko Aff. ¶ 8. Specifically during this time period, there was "a rise in the population of sex offenders[, which] . . . was a concern given that sex offenders are often victimized in a correction setting when housed in the general population." Franko Aff. ¶ 9. This also caused a concern for the safety of the correctional staff "who intervene to break up fights and provide a higher level of protection to the vulnerable population." Id.

While in IPC, it is undisputed that Perez was locked in his cell for twenty-three hours a day, with one hour of recreation during which he could use the phone or shower. Franko Aff. ¶ 10 (confirming that the sex offenders were locked down for twenty three hours a day because "[w]hile [defendants] would have liked to have given each of the persons housed at the jail the ability to move about the pod, this was not possible because of the number of persons the facility was housing and . . . the then current staffing levels."); Id. ¶ 11 (explaining that [*7] IPC inmates "were not given the option to join the general population [yet w]hile in [IPC, inmates] . . . were allowed out of their cells for one hour each day for recreation, showers, etc."). During the time period in question, while he was in IPC, Perez was upset that defendants "tamper[ed] with [his] legal mail and discriminat[ed against him] by [classifying him] in [I]PC against [his] will." Compl. at 4.

Defendants emphatically state that placement in IPC was not punitive, but prophylactic. Franko Aff. ¶ 14 (explaining IPC placements were "intended primarily to address the conditions at the jail of a higher than normal population of sex offenders who belong to a class of inmates who are most often targeted for victimization."). Defendants also contend that IPC inmates could participate in educational activities, just not with those inmates in general population, and shower during recreation. Franko Aff. ¶ 13. While Perez states that defendants tampered with his legal mail, nothing in Perez's file shows he ever "filed a grievance about alleged tampering with legal mail or claimed that he was slandered." Franko Aff. § 17.

Perez proffers that he asked for a grievance form and was refused. [*8] Compl. at 2. Pursuant to "State of New York Commission of Corrections [(hereinafter "COC")] rules, classification and placement in [IPC] is not grievable . . . ." Franko Aff. § 15. Additionally, Perez's file "does not [contain a request for Franko to] . . . review his classification . . . ." Id. Franko asked Officer Payne to review Perez's classification status on March 19, 2012. Franko Aff. ¶ 15; see also Dkt. No. 19 at 54-57 (inmate classification form completed by Officer Payne on March 21, 2012). Concurrently, in March of 2012 it was suggested to Franko, by a COC representative that IPC inmates' classifications be reviewed "to ensure that those in [IPC] . . . needed to be there." Franko Aff. § 15; see also Dkt. No. 19 at 51 (indicating that "at the behest of . . . COC, [Perez's] classification has been reviewed" and ultimately discontinued). As a result, Perez was reclassified and taken out of IPC. Franko Aff. ¶ 15; Dkt. No. 19 at 56.

Defendants assert that during the meeting with the COC, Franko "was informed that [Montgomery's] classification scheme was not incorrect [and] . . . th[e] evaluation forms being used did not discriminate . . . It was merely suggested that . . . Montogomery [*9] . . . review its procedures to insure that those in protective custody needed to be there." Franko Aff. ¶ 21. Perez spent approximately three months in IPC custody.

## B. Prior Incarcerations at Montgomery

Perez was previously incarcerated at Montgomery in 1999, 2005, and most recently, for a parole violation in 2011. Franko Aff. § 2. In May of 2005, Perez was charged with a sexual offense. Dkt. No. 19-1 at 14. He underwent a slightly different classification whereupon he was awarded (1) thirty-three points for the severity of his current charges of a violent felony or sexual offense felony and (2) ten points for prior misdemeanor charges. Dkt. No. 19-1 at 21-23. Perez received a medium classification and "was offered protective custody — he declined, stat[ing] that he will advise [Montgomery] if he has problems." Dkt. No. 19-1 at 24.

Perez was next violated on parole in November of 2010, appearing intoxicated upon his admission to Montgomery. Dkt. No. 19 at 81. Classification was pursuant to identical categories and the same form as that utilized during the time in question. Perez was awarded (1) ten points for requesting or requiring administrative segregation for safety; (2) twenty-two [*10] points for current charges of a parole warrant; (3) twenty points for a prior violent felony or sex offense felony; (4) nine points for alcohol dependance issues; (5) twenty-five points for a mental health history; (6) fifteen points for institutional misconduct; and (7) forty points for assault or attempted assaults on staff or inmates, resulting in a close custody classification and IPC because Perez

was "[f]ound guilty of assault and fighting [in] . . . 2000 with another inmate [as well as] for [his] own personal safety due to previous charges . . . [and presumably, his self-admitted] alcohol problem." Dkt. No. 19 at 71; see also Dkt. No. 19 at 68 (Administrative Segregation Notice Form signed by Perez on November 25, 2010).

## III. Discussion

In his complaint, Perez seeks "comprehensive, punitive, damages, [sic] of slander, ctitisizim [sic], tamperin [sic] with [his] legal mail and discrimination by putting [Perez] in [I]PC against [his] will." Compl. at 4. Such bare and conclusory claims are impossible to decipher. However, liberally reading that claim in conjunction with the inmate record that defendants provided, along with defendants' moving papers, Perez's complaint can be construed  [*11] to present _Fourteenth Amendment_ claims alleging due process and equal protection infringements, as well as a _First Amendment_ violation. Defendants seek dismissal contending that (1) Perez's Equal Protection claim is meritless; (2) they are entitled to qualified immunity; (3) the Prisoner Litigation Reform Act ("PLRA") precludes any recovery given the lack of physical injuries; and (4) the Court should refuse to exercise supplemental jurisdiction over Perez's slander claims.

## A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. _Fed. R. Civ. P. 56(c)_; _Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)_. Facts are material if they may affect the outcome of the case as determined by substantive law. _Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)_. All ambiguities are resolved and all reasonable inferences are drawn in favor of the  [*12] non-moving party. _Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997)_.

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. _Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)_. It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. _Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994)_; _Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988)_.

When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. _See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006)_. As the Second Circuit has stated,

[t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that

such submissions must be read to raise the strongest arguments that they "suggest," . . . . At the same time, our cases have also **[*13]** indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . ."

Id. (citations and footnote omitted); *see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191-92 (2d Cir. 2008)* ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally.'" (citations omitted)). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is that there be no genuine issue of material fact. *Anderson, 477 U.S. at 247-48*.


## B. *First Amendment*

"A prisoner's right to the free flow of incoming and outgoing mail is protected by the *First Amendment*." *Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003)* (citations omitted). In order to state a claim for denial **[*14]** of access to the courts, including those premised on interference with legal mail, a plaintiff must allege "that a defendant caused 'actual injury,' i.e. took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim.'" Id. (citing *Monsky v. Moraghan, 127 F.3d 243, 247 (2d Cir. 1997)* (quoting *Lewis v. Casey, 518 U.S. 343, 351, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996)*). Such injury must affect "a nonfrivolous legal claim [which] had been frustrated or was being impeded due to the actions of prison officials." *Warburton v. Underwood, 2 F. Supp. 2d 306, 312 (W.D.N.Y. 1998)* (citations omitted); *Shine v. Hofman, 548 F. Supp. 2d 112, 117-18 (D. Vt. 2008)* (explaining that actual injury "is not satisfied by just any type of frustrated legal claim because the Constitution guarantees only the tools that inmates need in order to attack their sentences . . . and . . . challenge the conditions of their confinement.") (internal quotation marks and citations omitted). Accordingly, without identification of the underlying action which was prejudiced, actual injury, and by extension a *First Amendment* violation, cannot be established. See *Christopher v. Harbury, 536 U.S. 403, 415, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002)* ("[T]he underlying **[*15]** cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation.").

Perez's claims fail to establish any sort of plausible *First Amendment* claim. All Perez states, in a conclusory manner, is that defendants tampered with his mail. Perez fails to include any facts about when, what or how often said tampering occurred. Moreover, Perez fails to indicate what injury he sustained as a result of said tampering.

"A prisoner's right to receive and send mail, however, may be regulated." *Johnson v. Goord, 445 F.3d 532, 534 (2d Cir. 2006)* (citations omitted). While legal mail is afforded the greatest protection, "greater protection [is afforded] to outgoing mail than to incoming mail." *Davis, 320 F.3d at 351* (citations omitted). The Second Circuit has determined two different tests by which to evaluate whether infringements on inmate correspondence were constitutionally justified.

Compare _Davis, 320 F.3d at 351_ ("Restrictions . . . are justified only if they further one or more of the substantial governmental interests of security, order, and rehabilitation and must be no greater than is necessary **[*16]** or essential to the protection of the particular government interest involved.") with _Johnson, 445 F.3d at 534-35_ (applying the Turner test to prisoner's challenge on regulating mail which asks whether (1) there is "a valid, rational connection between the prison regulation and the legitimate government interest . . . [(2)] whether there are alternate means of exercising the right [for inmates; (3)] . . . the impact accommodation of the right . . . will have on [DOCS; and (4)] . . . proposed alternatives.") (internal quotation marks and citations omitted).

To the extent a policy exists for inspecting mail, defendants explain that:
> [e]ach piece of mail that is received at . . . Montgomery . . . is screened for contraband. No mail is opened or read that is sent to an inmate or received by an inmate. Each piece of mail received is logged on records maintained by . . . Montgomery . . . Perez has not identified when or what portions of his mail he alleges were tampered with and therefore no records have been provided.

Franko Aff. § 23. Regardless of which test is utilized, defendants' policy of inspecting mail to prohibit contraband from entering the facility is justified. Thus, to the extent **[*17]** this policy did result in any potential interference, such actions were justified. These regulations touch at the heart of defendants' duties to protect government's security and order and are no greater than necessary. As Franko outlined, mail is screened but not unilaterally and discriminately opened. Furthermore, a general screening policy is consistent with legitimate penological interests. See e.g. _Wolff v. McDonnell, 418 U.S. 539, 575-76, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974)_ (explaining that while the _First Amendment_ protects against censorship of mail, "freedom from censorship is not equivalent to freedom from inspection or perusal.") (citations omitted).

Accordingly, to the extent Perez attempts to articulate a _First Amendment_ claim, such contentions are insufficient to establish a constitutional violation.


## C. _Fourteenth Amendment_


### 1. Due Process[3]

The _Due Process Clause of the Fourteenth Amendment_ states that "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. Amend. XIV § 1. It is important to emphasize that due process "does not protect against all deprivations of liberty. It protects **[*18]** only against deprivations of liberty accomplished without due process of the law." _Baker v. McCollan, 443 U.S. 137, 145, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979)_ (internal quotation and citations omitted). "A liberty interest may arise from the Constitution itself, . . . or it may arise from an expectation or interest created by state laws or policies." _Wilkinson v. Austin, 545 U.S. 209, 221, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005)_ (citations omitted). An inmate

---

[3] Defendants' memorandum of law did not address any due process issues.

retains a protected liberty interest to remain free from segregated confinement if the prisoner can satisfy the standard set forth in *Sandin v. Conner, 515 U.S. 472, 483-84, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995)*.

### a. Procedural Due Process

To state a claim for procedural due process, there must first be a liberty interest which requires protection. See generally *Valmonte v. Bane, 18 F.3d 992, 998 (2d Cir. 1994)* ("[P]rocedural due process questions [are analyzed] in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.") (citing *Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989))*. The Second Circuit has articulated a two-part test whereby the **[*19]** length of time a prisoner was placed in segregation as well as "the conditions of the prisoner's segregated confinement relative to the conditions of the general prison population" are to be considered. *Vasquez v. Coughlin, 2 F. Supp. 2d 255, 259 (N.D.N.Y. 1998)*. This standard requires a prisoner to establish that the confinement or condition was atypical and significant in relation to ordinary prison life. See *Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir.1999)*; *Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir.1996)*. This analysis is applicable to confinement for either punitive or administrative reasons. *Arce v. Walker, 139 F.3d 329, 334-35 (2d Cir. 1998)*.

While not a dispositive factor, the duration of a disciplinary confinement is a significant factor in determining atypicality. *Colon v. Howard, 215 F.3d 227, 231 (2d Cir. 2000)* (citations omitted). The Second Circuit has not established "a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights." *Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004)* (citations omitted). Instead, the Second Circuit has provided guidelines that "[w]here the **[*20]** plaintiff was confined for an intermediate duration—between 101 and 305 days-development of a detailed record of the conditions of confinement relative to ordinary prison conditions is required." *Id. at 64-65* (citing *Colon, 215 F.3d at 232*). In the absence of a dispute about the conditions of confinement, summary judgment may be issued "as a matter of law." *Id. at 65* (citations omitted). Conversely, where an inmate is confined under normal SHU conditions for a duration in excess of an intermediate disposition, the length of the confinement itself is sufficient to establish atypicality. *Id.* (citing *Colon, 215 F.3d at 231-32*). Also, "[i]n the absence of a detailed factual record, cases in this Circuit typically affirm dismissal of due process claims where the period of time spent in SHU was short - e.g. 30 days - and there was no indication [of] . . . unusual conditions." *Harvey v. Harder, No. 09-CV-154 (TJM/ATB), 2012 U.S. Dist. LEXIS 132248, 2012 WL 4093791, at *6 (N.D.N.Y. July 31, 2012)* (citing inter alia *Palmer, 364 F.3d at 65-66*).[4]

### i. Initial Placement in IPC

---

[4] All unreported decisions are attached as exhibits to this Report-Recommendation.

New York regulations require "chief administrative officer[s] of each [local **[*21]** or county] correction facility [to] establish, implement, and maintain a formal and objective system for the consistent classification of all inmates." _N.Y. Comp. Codes R. & Regs. Tit. 9, § 7013.1_. These detailed regulations provide (1) various classification categories (_Id._ _§ 7013.4_); (2) provisions for a screening instrument which records information regarding the inmate's physical and mental health, criminal history, incarceration history, and any other relevant information (_Id._ _§ 7013.7_); (3) requirements that classification be generally determined within five business days of admission into the facility (_Id._ _§ 7013.8_); and (4) conditions under which an inmate's classification should be changed (_Id._ _§ 7013.9_).

The Montgomery policies regarding classification reference the above regulations. Dkt. Dkt. No. 19-1 at 54. Specifically, the Montgomery policy states that initial screening and risk assessment will occur and classification will generally happen within five business days. _Id._ (citing N.Y. COMP. CODES R. & REGS. TIT. 9, § 7013). Additionally, the policy provides that

> INMATES WHO . . . HAVE BEEN ASSIGNED TO PROTECTIVE CUSTODY SEGREGATION AFTER THE COMPLETION OR DURING THEIR CLASSIFICATION **[*22]** SCREENING WILL BE SUBJECT TO A 23 HOUR A DAY LOCK IN STATUS AND WILL BE HOUSED SEPARATELY FROM GENERAL POPULATION, FOR A MANDATORY 60 DAY PERIOD OF TIME. AFTER 60 DAYS YOU MAY REQUEST, IN WRITING, TO THE JAIL ADMINISTRATIVE OFFICER A CHANGE IN YOUR PROTECTIVE CUSTODY STATUS. IF IT IS DETERMINED THAT THERE IS NO FURTHER THREAT TO YOUR SAFETY, YOU WILL BE TAKEN OUT OF PROTECTIVE CUSTODY AND MOVED INTO GENERAL POPULATION. HOWEVER, IF IT IS DETERMINED THAT A THREAT TO YOUR SAFETY STILL EXISTS, YOU WILL BE KEPT IN PROTECTIVE CUSTODY AND YOUR SITUATION WILL BE RE-EVALUATED EVERY 30 DAYS AFTER UNTIL SUCH TIME THAT NO THREAT EXISTS.

_Id._ (citing N.Y. COMP. CODES R. & REGS. TIT. 9, § 7013) (emphasis in original). While not specifically articulated in the policy, defendant Franko affirmed, and the jail intake forms corroborated, that the same categories were used when classifying inmates as those articulated in the New York regulations. Most specific to this case was Perez's past criminal history and sex offender status.

It is undisputed that initially, during classification, Perez spent a day segregated for classification purposes. This time, in and of itself, is insufficient to establish a protected **[*23]** liberty interest.

Moreover, "[t]he [Supreme] Court has counseled judicial restraint in the federal courts' review of prison policy and administration, noting that courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." _Giano v. Senkowski, 54 F.3d 1050, 1053 (2d Cir. 1995)_ (internal quotation marks and citations omitted). The balancing test articulated in _Turner v. Safely_ has been deemed uniquely instructive in considering whether "a prison regulation infringing on an inmate's constitutional rights is valid[,] so long as the regulation is reasonably related to the legitimate penological interests." _Harvey, 2012 U.S. Dist. LEXIS 132248, 2012 WL 4093791, at *7_ (citing _Turner, 482 U.S. at 89_).

The <u>Turner</u> Court determined that the four factors to be considered are: 1) whether there is a rational relationship between the regulation and the legitimate government interests asserted; 2) whether the inmates have alternative means to exercise the right; 3) the impact that accommodation of the right will have on the prison system; and 4) whether ready alternatives exist which accommodate the right and satisfy the governmental interest.

<u>Benjamin, 905 F.2d at 574</u> (citing <u>Turner v. Safley, 482 U.S. 78, 89-91, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987)</u>.

A **[*24]** recent case in the Northern District of New York has already deemed the initial, temporary segregation of an inmate in a county jail during classification procedures valid and not an infringement upon due process protections. <u>Harvey, 2012 U.S. Dist. LEXIS 132248, 2012 WL 4093791, at *7</u>. In that case, the county jail had identical initial classification policies also based on the New York regulations.

Until an inmate is screened for prior violence; propensity for victimization; possible enemies; behavior; and adjustment, the facility administrators have no way of knowing where the best place to house the inmate will be. Thus, a short classification period in administrative segregation in order to complete this objective is a completely reasonable restriction on an inmate's liberty.

<u>Harvey, 2012 U.S. Dist. LEXIS 132248, 2012 WL 4093791, at *7</u>. For substantially similar reasons, to the extent that Perez challenges his initial classification period spent in segregation, such contentions are insufficient to establish a due process violation.

## ii. Continued Placement in IPC

As previously explained, duration of confinement alone is not a dispositive factor in determining whether due process rights were infringed. Defendants continually contend that Perez's **[*25]** confinement was administrative and prophylactic, not disciplinary. See e.g. <u>Colon v. Goord, No. 05-CV-129 (TJM/GJD), 2008 U.S. Dist. LEXIS 22187, 2008 WL 783364, at *7 (N.D.N.Y. Mar. 20, 2008)</u> (explaining that in the NYS Department of Corrections and Community Supervision ("DOCCS") facilities, which fall under different regulations but have analogous housing classifications, "IPC is *not* a disciplinary unit . . . .") (emphasis in original). However, the undisputed housing conditions for Perez in IPC, particularly being locked in one's cell for twenty-three hours a day, were more analogous to disciplinary confinement than segregation. See e.g. Id. (explaining that in the DOCCS facilities "IPC inmates are afforded more privileges and have less restrictions than Ad[ministrative] Seg[regation] inmates . . . [who] are subject to the same restrictions as disciplinary S[pecial ]H[ousing ]U[nit] inmates . . . ."). This was acknowledged by the COC when it urged Montgomery to reevaluate the classification of all IPC inmates, to ensure that the classification was resulting in the appropriate inmates being housed under such restrictive conditions. Accordingly, although not quite as long as the intermediate standard articulated **[*26]** above, the fact that Perez spent an additional three months in IPC, in the aforementioned environment, is sufficient to satisfy the <u>Sandin</u> atypical environment test so that a liberty interest, protected by due process, has been established.

As a form of administrative segregation, as opposed to disciplinary confinement, placement in IPC "requires only an informal, nonadversary review." _Smart v. Goord, 441 F. Supp. 2d 631, 641 (S.D.N.Y. 2006)_. The procedural due process protections are minimal, dictating that the informal review must occur within a reasonable time, after the inmate has had some notice of the charges lodged against him and an opportunity to present his views to the administrator making the determination about segregation. _See e.g. McClary v. Kelly, 4 F. Supp. 2d 195, 212 (W.D.N.Y. 1998)_ (citing _Hewitt . Helms, 459 U.S. 460, 460, 476, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983))_. Moreover, the "prison officials must engage in periodic review of the decision . . . to ascertain whether a prisoner remains a security risk . . . [which is] supported by some evidence." _Id. at 212-13_ (internal quotation marks and citations omitted). Lastly, "administrative segregation may not be used as a pretext for indefinite confinement[, [*27] so] . . . periodic reviews [cannot be] a sham; the reviews must be meaningful and not simply perfunctory." _Id. at 213_ (citations omitted); see also _Covino v. Vermont Dep't of Corr., 933 F.2d 128, 130 (2d Cir. 1991)_ (explaining that "[a]t some point, however, the administrative necessity for involuntary lock-up begins to pale . . . [and] smacks of punishment.").

Initially, Perez received a document that indicated that because of his criminal history, he was to be placed in IPC. Perez signed the form, which served as notification of the administrative segregation, as well as the initial opportunity for Perez to express his displeasure with his classification. Both appear to comply with the minimal procedures guaranteed by the _Due Process clause_.

The Montgomery policy indicated above details that the prison officials were supposed to review the IPC inmates' files after sixty days and then, if the danger were deemed to still persist, every thirty days thereafter. Moreover, inmates were allowed, after the initial sixty day period, to seek review of their classification in IPC. It is unclear what effort Perez made to file a grievance or seek review regarding his classification. Pursuant to [*28] the complaint, Perez asked for a grievance and was advised that the classification status was not grievable, but it is unclear what direction he received, if any, informing him of the proper avenues for complaining about such placement.

Liberally construing the facts in the light most favorable to Perez, regardless of whether he properly sought reclassification, nothing in defendant Franko's affidavit indicates that facility staff engaged in the periodic review of Perez's confinement outlined in the facility's procedures. While a "lack of specificity . . . [regarding] the dates of the reviews _or_ the specific decision[s]," is not required, it is clear that there needs to be some evidence that a meaningful review occurred. See _Colon, 2008 U.S. Dist. LEXIS 22187, 2008 WL 783364, at *9_ (explaining that a meaningful review occurred even where the inmate received short, cursory memoranda "indicating that his circumstances had not changed, and his IPC status was being continued," as the record demonstrated through several affidavits that the inmate's case was carefully and regularly contemplated and defendants unsuccessfully attempted to transfer him on several occasions to a safer facility where housing in the general [*29] population was possible) (emphasis in original). No such evidence presently exists on the record before the Court. Accordingly, Perez's "allegations raise the possibility that []he was confined in IPC without meaningful review or

sufficient process," and defendants have not provided sufficient factual support to quell such disputes in material facts. *Smart, 441 F. Supp. 2d at 642.*

Additionally, to the extent that defendants may rely on the <u>Turner</u> analysis above to relieve them of responsibility in the face of a potential constitutional infringement, such reliance is misplaced. First, it does not appear that defendants followed their own regulations with respect to periodic reviews of the inmates; thus, the <u>Turner</u> analysis is inappropriate. See <u>Nolley v. County of Erie, 776 F. Supp. 715, 739 (W.D.N.Y. 1991)</u> (explaining that the <u>Turner</u> analysis is applicable where it is argued that "an otherwise valid regulation impinges on a plaintiff's constitutional rights, but [not] where the defendants fail[] to follow even their own regulations."). However, it is unclear that defendants did not perform any kind of review, so a question of material fact exists.

Second, even assuming the <u>Turner</u> analysis **[*30]** did apply, defendants have still failed to proffer sufficient evidence to establish the absence of a question of material facts. Defendants repeatedly state that housing inmates with a criminal history of sex crimes or with a sex offender status was not punitive, but rather prophylactic, as these inmates represented a risk to safety and security of the facility. Defendants have proffered an affidavit from Franko which indicates that inmates with sex offender status were generally more vulnerable and susceptible to victimization, the population of the jail was increasing without a concomitant increase in the number of corrections officers, and that increase was attributed primarily to larger numbers of sex offenders entering custody. Other districts have deemed an inmate's sex offender status to represent a safety issue requiring protective custody. *See e.g. <u>Tucker v. Royce, Nos. 09CV35-MPM-JAD, 09CV106-MPM-JAD, 10CV4-MPM-JAD, 2011 U.S. Dist. LEXIS 12680, 2011 WL 541116, at *6 (N.D.Miss. Feb. 8, 2011)</u>* (denying <u>Eighth Amendment</u> claims regarding IPC classification because the inmate "was placed in [IPC] for a reason: as a sex offender, he was vulnerable to assault from other inmates . . . ."). Moreover, the Second **[*31]** Circuit has discussed, though not explicitly commented on the constitutionality of the policy of offering IPC to inmates with sex offender histories. See <u>Arnold v. County of Nassau, 252 F.3d 599, 601 (2d Cir. 2001)</u> (explaining in an action alleging failure to protect, and not a due process violation, that the inmate was initially placed into IPC "pursuant to 'Warden's Order: Sex Crimes,' an order designed to assure that inmates charged with sex crimes are removed from the general prison population because they are a greater risk of assault by other inmates.").

However, the present record proffers nothing more than conclusory assertions about the circumstances faced by defendants at Montgomery. Defendants have failed to provide any documentation regarding information including specific numbers of the inmate population and the percentage of sex offenders previously housed at Montgomery, that population's anticipated increase in comparison to the rest of the incoming inmate population, or the number of attacks on sex offenders or those with a sexually based criminal history. See <u>Smart, 441 F. Supp. 2d at 645</u> (denying qualified immunity because defendants failed to demonstrate anything **[*32]** more than "conclusory statements" about safety concerns essentially providing the court with "no showing that there was any reason to fear for [the inmate's] personal safety.").

Furthermore, Perez's inmate file evidences that he was previously housed at Montgomery on another occasion after his sex offense conviction. While he was housed in IPC at that time, records indicate that concerns included not just his prior criminal history, but his history of

previously assaulting an inmate while incarcerated and his self-admitted alcohol dependancy. Conversely, during the present classification, there was no mention of either the assault or substance abuse history. Instead, classification in IPC was premised solely on Perez's prior criminal history. On this record, Perez's classification history seems inconsistent and presents questions of fact surrounding the legitimacy of defendants claims that all sex offenders were prone to victimization and thus were required to be housed in IPC for prophylactic measures.

Accordingly, to the extent that procedural due process claims are intimated regarding Perez's continued confinement in IPC, material questions of fact exist so that such claims should [*33] remain as litigation moves forward.

## b. Substantive Due Process

Liberally reading Perez's complaint, it appears he has also alleged a substantive due process claim concerning his placement and continued confinement in IPC based on his criminal history. "Substantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense . . . but not against government action that is 'incorrect or ill-advised'" _Lowrance v. Achtyl, 20 F.3d 529, 537 (2d Cir.1994)_ (internal citations omitted). "To establish a violation of substantive due process rights, a plaintiff must demonstrate that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" _Okin v. Villiage of Cornwall-On-Hudson Police Dep't, 577 F.3d 415, 431 (2d Cir. 2009)_ (quoting _County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998))_. As already observed by the Northern District of New York, "[v]ery few conditions of prison life are 'shocking' enough to violate a prisoner's right to substantive due process. In _Sandin v. Conner_, the Supreme Court provided only two examples: the transfer to a mental hospital [*34] and the involuntary administration of psychotropic drugs." _Samms v. Fischer, No. 10-CV-349 (GTS/GHL), 2011 U.S. Dist. LEXIS 97810, 2011 WL 3876528, at *12 (N.D.N.Y. Mar. 25, 2011)_ (citations omitted).

In this case, while the actions of defendants in articulating a policy which summarily housed a population of inmates in IPC pursuant to potentially legitimate concerns related to inmate facility and security could be categorized as incorrect or ill-advised, it does not appear that such a policy was arbitrary, conscience shocking, or constitutionally oppressive. Moreover, given the limited number of recognized circumstances where substantive due process is advanced, and the dissimilarity between those instances and the present claim, to the extent that Perez is attempting to advance such due process arguments, they are insufficient to establish a constitutional claim.

## 2. Equal Protection

The _Fourteenth Amendment's Equal Protection Clause_ mandates equal treatment under the law. Essential to that protection is the guarantee that similarly situated persons be treated equally. _City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985)_; _Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005)_ ("To prove a violation [*35] of

the _Equal Protection Clause_ . . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination."). "[A]bsent classification by race, alienage or national origin, legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." _Vargas v. Pataki, 899 F. Supp. 96, 98 (N.D.N.Y. 1995)_ (citations, quotation marks, and internal alterations omitted). Accordingly, strict scrutiny shall only be employed "where the classification involves a fundamental right or a suspect class." _Id._ (citations and quotation marks omitted).

If an inmate is unable to establish membership in a protected class, "the Supreme Court has recognized 'class of one' claims, where the plaintiff must prove that he was intentionally treated differently from others similarly situated without a rational basis for the difference in treatment." _Fortunatus v. Clinton County, N.Y., No. 12-CV-458 (RFT), 937 F. Supp. 2d 320, 2013 U.S. Dist. LEXIS 48613, 2013 WL 1386641, at *11 (N.D.N.Y. Apr. 4, 2013)_ (citing _Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000))_. Such plaintiffs

> must show an extremely [*36] high degree of similarity between themselves and the persons to whom they compare themselves . . . [and] must establish that (1) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

_Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006)_ (citations omitted). "Generally, whether parties are similarly situated is a fact-intensive inquiry," best suited for the jury, unless "no reasonable juror could find that the persons to whom plaintiff compares itself are similarly situated," and then summary judgment is appropriate. _Id._ (citations omitted).

Prisoners are not a part of a suspect class. _Scott v. Denison, 739 F. Supp. 2d 342, 362 (W.D.N.Y. 2010)_ (citations omitted); _Lee v. Governor of State of New York, 87 F.3d 55, 60 (2d Cir. 1996)_ ("[P]risoners either in the aggregate or specified by offense are not a suspect class . . . ."). "[S]ex offenders [also] do not compromise [*37] a suspect or quasi-suspect class . . . [thus any] allegedly different treatment is subject to rational basis scrutiny, that is, it must be rationally related to a legitimate state interest." _Taylor v. New York State Dep't of Corr. Servs., No. 07-CV-1288 (NAM/RFT), 2009 U.S. Dist. LEXIS 100977, 2009 WL 3522781, at *2 (N.D.N.Y. Oct. 29, 2009)_ (citations omitted).

In this case, a question of fact remains as to Perez's Equal Protection claim. Both sides agree that Montgomery's policy was to summarily classify and house all sex offenders in IPC for their own safety. Therefore, sex offenders were treated differently from all other inmates who were generally housed in, and accorded the amenities of, general population. Perez has successfully established a high degree of similarity between himself and the other sex offenders and such similarity and difference in treatment are undisputable so that mistake is not a reasonable possibility.

As previously discussed, defendants have proffered affidavits indicating that their policy of confining sex offenders and those with sexual offenses in their criminal history to IPC was based on a legitimate concern for safety in the prison given the increasing number of inmates and stagnant [*38] number of staff. Furthermore, for the reasons articulated above, there are questions of fact which surround the legitimacy of Montgomery's policy given the lack of factual and statistical evidence. Conversely, if defendants' claims are proven to be more than conclusory, a rational basis may be deemed to exist. Accordingly, defendants' have failed to provide sufficient evidence to establish that no question of material fact exists regarding the reasons defendants are proffering for segregating sex offenders to IPC. Accordingly, defendants' motion on this ground is denied.

## D. Qualified Immunity

Defendants also contend that they are entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)*; *Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002)* (McAvoy, J.), aff'd, *80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003)*.

> [A] decision dismissing a claim based on qualified immunity at the summary judgment state may only be granted when a court finds that [*39] an official has met his or her burden demonstrating that no rational jury could conclude (1) that the official violated a statute or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.

*Coollick v. Hughes, 699 F.2d 211, 219 (2d Cir. 2012)* (quoting *Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011)*) (internal quotation marks omitted). The Supreme Court has granted district courts "discretion to decide which of the two prongs . . . to tackle first [in order to] . . . save[] judicial resources by avoiding unnecessary decisions whether certain conduct violates a constitutional or statutory right, which it is beyond reproach that the conduct was not objectively unreasonable in light of existing law." *Id.* (internal quotation marks and citations omitted).

A constitutional right is clearly established if it is both reasonably specified and affirmed by both Supreme Court and Second Circuit case law and understood to be viewed by a reasonable defendant as unlawful under the status of the law at the relevant time in question. *Looney v. Black, 702 F.3d 701, 706 (2d Cir. 2012)*. Such an inquiry is context-specific, looking at "the contours of the [*40] right" which is alleged to be protected so that "the very action in question [need not] ha[ve] previously been held unlawful; but . . . in the light of pre-existing law the unlawfulness must be apparent." *Doninger v. Niehoff, 642 F.3d 334, 345-46 (2d Cir. 2011)* (internal quotation marks and citations omitted).

Defendants contend that their decision to institute a policy segregating all inmates labeled as sex offenders or with sexually violent crimes in their criminal histories into IPC is protected by

the qualified immunity doctrine. While there is no New York regulation concerning the placement or review of an inmate in local custody being placed into IPC, or a case which has been decided presenting identical facts, the constitutional rights surrounding an individual's right to due process and to remain housed in a manner presenting neither atypical nor significantly different circumstances than ordinary prison life were clearly established at the time of the case. See Sandin v. Conner, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995); Wright v. Coughlin, 132 F.3d 133, 136-38 (2d Cir. 1998) (discussing how duration and conditions of confinement serve to illustrate the atypical and significant requirement created **[*41]** by Sandin). Moreover, the right of an inmate in administrative segregation to receive informal, periodic reviews was also clearly established. See Hewitt, 459 U.S. at 476, 477 n.9 (deeming informal, non-adversarial procedures sufficient for administrative segregation and requiring periodic and meaningful reviews of continued confinement to preclude such confinement as a pretext for indefinite punishment). As was an inmate's right not to be treated different than others unless a rational basis existed. See Lee v. Governor of State of New York, 87 F.3d 55, 60 (2d Cir. 1996) (citing City of Cleburne v. Cleburne Living Ctr, Inc., 473 U.S. 432, 440, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985)). Accordingly, it is apparent that Perez's Fourteenth Amendment rights to Due Process and Equal Protection were clearly established at the time in question.

Defendants contend that because of increased inmate populations, legitimate concerns for the safety and security of the institution, inmates, and staff compelled IPC for inmates like Perez. Similar scenarios make it clear that a holding an inmate in segregation, under adverse conditions, without a legitimate basis, and without review is unreasonable. See Smart v. Goord, 441 F. Supp. 2d 631, 645 (S.D.N.Y. 2006) **[*42]** (denying qualified immunity where defendants "made no showing with regard to either the conditions of . . . confinement or the extent to which confinements of similar duration may or may not be typical . . . .," proffered only conclusory allegations about asserted safety concerns, and failed to defeat arguments that procedural protections afforded to inmate were anything more than "hollow formalit[ies]."). Despite defendants' proffers to the contrary, at this juncture, for the reasons stated above, the undersigned cannot conclude that defendants' have met their burden in demonstrating that the policy was rationally related to a legitimate penological objective. Without proof of a compelling safety concern, neither defendants' actions can be deemed reasonable given the case law and constellation of circumstances surrounding Perez's IPC confinement.

Accordingly, it is recommended that defendants' motion on this ground be denied.


**E. PLRA**

Defendants correctly state that the PLRA provides that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical **[*43]** injury." 42 U.S.C. § 1997e(e). Had Perez sought recovery for compensatory damages related to emotional injury, such recovery would be precluded without showing a concomitant physical injury. Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999) ("[I]n the case of suits seeking damages for mental or emotional injuries . . . a defendant in a prisoner § 1983 suit may also assert as an affirmative defense the plaintiff's failure to comply with the PLRA's requirements [and make a prior showing

of a physical injury]."). However, Perez seeks "comprehensic, punitive, damages" and makes no mention of linking the damages to emotional harm. Compl. at 4. Thus, defendants' argument is moot. Accordingly, for these reasons, defendants' motion is denied on this ground.

### F. Slander Claims

Perez also attempts to assert a claim for slander. Defendants contend that, to the extent Perez has proffered state law claims, such must be dismissed for Perez's failure to file a notice of claim as required by *New York General Municipal Law § 50-e*. Defs. Mem. of Law (Dkt. No. 19 at 6-15) at 9-10. Regardless of whether the failure to file a notice of claim could be fatal to Perez's assertions, he has failed to allege **[*44]** a claim which the Court could recognize or choose to exercise supplemental jurisdiction over.

"A tort, such as slander, is not actionable under *§ 1983* unless it implicates a liberty interest." *Davis-Payne v. Galie, No. 09-CV-6363 (MAT), 2012 U.S. Dist. LEXIS 148713, 2012 WL 4959445, at *5 (W.D.N.Y. Oct. 16, 2012)* (citations omitted). Alternately, even if the slander does not rise to the level of a constitutional claim, a court could exercise supplemental jurisdiction over the alleged pendant state law claim. *28 U.S.C. § 1367*. However, Perez has alleged no facts, let alone sufficient facts, to allow such a claim to continue. *O'Diah v. Artus, 887 F. Supp. 2d 497, 502 (W.D.N.Y. 2012)* (declining to exercise jurisdiction over a conclusory slander claims where plaintiff failed to include any concrete harm or other "sufficient facts to make out such a claim.") (citaitons omitted). There is no basis to consider this a constitutional violation or exercise supplemental jurisdiction. Accordingly, to the extent Perez has attempted to state either federal or state based slander claims, such claims fail.

### IV. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. **[*45]** 19) be:

1. **GRANTED** as to defendants' claims to dismiss Perez's proffered state-based slander claims; and

2. **DENIED** in all other respects.[5]

Pursuant to *28 U.S.C. § 636(b)(1)*, the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation." *N.Y.N.D.L.R. 72.1(c)* (citing *28 U.S.C. §636(b)(1)(B)-(C)*). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) _DAYS_**

---

[5] Defendants move for summary judgment contending that Perez's Equal Protection claim be dismissed, they are entitled to qualified immunity, the PLRA precludes damages, and Perez's state-based slander claims should be dismissed. For the reasons discussed supra, defendants' motion is granted with respect to Perez's slander claims and denied in all other respects. Moreover, defendants failed to discuss the merit of Perez's inartfully pled due process claims which, for the reasons stated supra, should not be dismissed.

2013 U.S. Dist. LEXIS 100689, *45

***WILL PRECLUDE APPELLATE REVIEW***. *Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993)*; *Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989)*; *28 U.S.C. § 636(b)(1)*; *Fed. R. Civ. P. 72, 6(a)*, **[\*46]** *6(e)*.

Dated: June 13, 2013

Albany, New York

/s/ Christian F. Hummel

Christian F. Hummel

U.S. Magistrate Judge

---

**End of Document**